## S. & W. SOUTHGATE *v.* MONTGOMERY & EIVERS.

Courts of law have concurrent jurisdiction with the Court of Chancery in the examination of accounts between parties.

Where a party has elected a court of law as the forum for the examination of the accounts, after a decision in such court of law, he cannot come into a court of equity and have the same accounts re-examined.

Where there existed mutual accounts between M. and E., and E. sued M. in a foreign court for a settlement, and judgment was rendered against E., and afterwards a suit pending in the Supreme Court of this state, commenced and prosecuted by the assignees of M. in the name of M. against E., was referred to referees, who reported a balance due to E. from M., on which report judgment was entered in favor of E., it was held, that the judgment against E. in the foreign court was not binding upon E. as between him and the assignees of M., and that if that judgment was binding upon E., as it was known to the assignees previous to the hearing before the referees, it should have been insisted upon by them at that hearing, and could not afterwards be a ground of relief in this court.

In Chancery, a judgment recovered in a court of law is considered as binding upon the real parties in the suit, although not the nominal parties on the record.

A court of chancery will judicially notice the fact, that courts of law recognize and protect the rights of assignees suing in the name of their assignor.

ON the 16th May, 1810, the defendants were severally doing business in the West Indies, and the plaintiffs were merchants at Norfolk, in Virginia. The defendants had private dealings or accounts, and had also a quantity of lumber and provisions belonging to them jointly, which had been recently consigned to Hancock & McCormick, of St. Croix, to be *sold on their joint account. Montgomery had also in his hands a protested bill of exchange, drawn by Eivers in favor of McGregor or order, for 420*l*. 10*s*. 8*d*. sterling, which had in fact been sent to

Montgomery to collect for the plaintiffs, but which Eivers, in his answer, swears he then, and for a long time afterwards, supposed belonged to Montgomery. At the time above mentioned, the defendants stated their accounts, and found a balance due to Montgomery of $3,732 77, which Eivers promised to pay with interest; and by a memorandum indorsed on the account stated, Eivers appropriated his half of the net proceeds of the provisions and lumber in the hands of Hancock & McCormick, and in the hands of Montgomery, to the payment of that balance. He also, at the same time, took up the protested bill, and gave to Montgomery, therefor, an agreement as follows:

|  | £ | s. | d. |
|---|---|---|---|
| "Bill for . . . . . . . . . . . | 420 | 10 | 8 |
| Damages ten per cent. . . . . . | 42 | 01 | 0 |
| Half per cent. protest, &c. . . . . | 2 | 10 | 0 |
| Interest, one per cent. per month, . | 50 | 09 | 3 |
|  | 515 | 11 | 11 |

I promise to pay unto Robert Montgomery, or order, 515l. 11s. 11d. sterling, bearing protested bill interest from 31st January last, till paid, say 515l. 11s. 11d. sterling, being for value in my bill protested on Messrs. Robert Burke & Co. of Cork, liable to a special count. St. Croix, 16th May, 1810. (The above to be paid out of my one half proceeds of provisions and lumber addressed to Messrs. Hancock & McCormick, Bass End, after deducting your accounts.)

OWEN EIVERS."

On the 1st of July, 1811, Montgomery transmitted to the plaintiffs 200l., together with the last mentioned agreement, on which he made two indorsements; the one acknowledging the receipt of the 200l. as the whole amount of the balance in his hands of the proceeds of provisions and lumber, and by the other, ordering the balance to be paid to the plaintiffs. They received the money and contract, and ratified the act of Montgomery in giving up

the protested bill and taking this contract in lieu thereof. In July, 1817, the plaintiffs sued Eivers in the name of Montgomery, in the Supreme *Court of this state, to recover the balance due to them on the agreement; the result of which suit appears by the report of that case. (*Montgomery* v. *Eivers*, 17 John. R. 38.) In October, 1810, they commenced another suit in the same court, in the name of Montgomery against Eivers. That suit was referred to referees, and finally heard before them in April, 1822, when they found and reported a balance due from Montgomery to Eivers of $208 15, on which judgment has been subsequently entered in favor of Eivers in that court.

In May, 1822, the plaintiffs filed their bill in this cause, setting forth substantially the above facts, and alleging, among other things, that by the depositions taken in the last mentioned suit, and used before the referees, it appeared that in 1820, Eivers sued Montgomery in the town court of Frederickstadt, in the island of St. Croix, for the final settlement of all their accounts, and that a balance was then found due to Montgomery from Eivers of about 200 pieces of eight; that on the hearing before the referees, the counsel of Eivers produced an account in the handwriting of Montgomery, which the plaintiff's counsel were not apprised of until a short time before the hearing, when it was shown to them to obtain their admission of the genuineness of the handwriting, and they allege it must have had an influence on the minds of the referees. The plaintiffs allege that they do not know what was allowed on the one side or the other by the referees, and are unacquainted with the state of accounts between the defendants, and of course do not know which of the defendants ought to pay the balance due them for the protested bill of exchange; and they pray that the defendants may be compelled to discover which of them is liable to pay the same, and that payment may be decreed against the one who ought to pay. Eivers, in his answer, insists there is a balance due to him from Montgomery more than sufficient to satisfy the balance due the plaintiffs, and

1828.

Southgate
v.
Montgomery.

[*44]

which accrued long before he had any knowledge of their interest in the contract of the 16th May, 1810. He admits his counsel produced the account before the referees, as stated in the bill, but denies it was fraudulently or unfairly done, or was intended as a surprise upon the plaintiff's counsel. On the contrary, he says *it was shown to such counsel, and a copy thereof given to them the day previous to the hearing. He insists that the claim of the plaintiffs in *res adjudicata* as between him and them, and alleges that the balance found against him in the town court of Frederickstadt, of which he has heard, was unjust, and was caused by the sickness of his attorney at that place, which prevented him from properly attending to his rights before that court.

*G. Griffin*, for complainants :—The defendants severally deny their liability. The bill filed in this cause is like a bill of interpleader. The defendants have rendered it necessary by their own conduct. The remedy at law is doubtful and difficult. A party may first litigate to a final decision at law and then come into Chancery, upon the ground that the remedy at law is difficult. The complainants were not parties on the record to the suit at law. Not being so, there is no technical estoppel at law, and therefore no equitable estoppel here. Eivers is estopped by the judgment recovered in the West Indies. *Res adjudicata* abroad is of equal effect as at home. (*Gelston* v. *Hoyt*, 1 John. Ch. R. 543. *Griswold* v. *Pitcairn*, 1 Con. R. 85.) The only exception is, where the successful party sues here, and the decree is in a foreign admiralty court. (*King* v. *Baldwin*, 17 John. R. 384 ; *Duncan* v. *Lyon*, 3 John. Ch. R. 351 ; *Foster* v. *Wood*, 6 John. Ch. R. 87 ; *Bateman* v. *Willow*, 1 Sch. & Lef. 205 ; *Mitchell* v. *Harris*, 2 Ves. jun. 135 ; *Wilmot* v. *Leonard*, 2 Swans. R. 682 ; Colwell, 93 ; 3 Atk. 644.)

*Ogden* and *E. Clark*, for the defendant Eivers. The com-

plainants being parties to the suit in the Supreme Court are precluded from relief in this court. They adopted the act of Montgomery. (17 John. R. 38.) In the second suit, the complainants were necessarily bound to show the state of the account between Montgomery and Eivers. This is an application to review the decision of the Supreme Court. It is *res adjudicata* there. The only equitable ground stated in the bill, is the alleged surprise and fraud in the production of the account in the handwriting of Montgomery, before the referees; and this is denied by the answer, and not established by any *proof. In the trial in St. Croix, the complainants were not parties. In the suit in the Supreme Court here, they were the real parties, and were bound by it. (*Hawley* v. *Mancius*, 7 John. Ch. R. 174; *Shottenkirk and others* v. *Wheeler and others*, 3 John. Ch. R. 275; *De Reimer* v. *Cantillon*, 4 John. Ch. R. 85; *French* v. *Shotwell*, 6 John. Ch. R. 235.)

1828.

Southgate
v.
Montgomery.

[*45]

THE CHANCELLOR:—If the expression, " after deducting your account in the agreement of the 16th May, 1810," refers to an account of Hancock and McCormick, to whom the draft or agreement appears to be addressed, and not to the account of Montgomery, which was liquidated at the same time, the plaintiffs have nothing to do with the general accounts between the defendants; because Eivers' half of the fund then in the hands of Hancock and Mc-Cormick, which Montgomery afterwards received, together with the 80 puncheons of meal, which he also received from them, as appears from the testimony of Hancock, stated in the plaintiffs' bill, amounted to 6,634 pieces of eight 5 bits and 3 stivers, (equal to $4,246 21;) a sum nearly double the amount due to the plaintiffs in the bill, independent of the sum of 3,954 pieces of eight and 5 bits, received by Montgomery for the provisions and lumber, sold by his agent Peter Montgomery, one half of which also belonged to Eivers. But if, as I am inclined to believe, the intention of the defendants was, that the amount due to

Montgomery on their general accounts, was first to be paid out of the proceeds of the provisions and lumber, there would not be enough to pay both demands. There would still be a deficiency of 6 or 700 dollars, after including in Eivers' share of the fund one half of the amount received from Peter Montgomery. And Eivers having dealt with Montgomery in relation to the bill of exchange, without any knowledge of the plaintiff's claim, it would be necessary to go into the general accounts between the defendants, to ascertain which was equitably bound to pay the balance due to the complainants. This being a complicated account, the plaintiffs, in the first instance, would have been entitled to call Eivers into this court, for the purpose of having that account taken here. Whether they could bring both de-

[*46]

*fendants here, and compel them to settle their accounts between themselves, on the principles of a bill of interpleader, which I am inclined to think they might under the particular circumstances of this case, is a question not necessary to be decided at this time. They also had a right to prosecute Eivers in a court of law, in the name of Montgomery ; and the trial at law, under the decision of the Supreme Court in the first suit, necessarily required an examination of the accounts between Montgomery and Eivers. The court of law had concurrent jurisdiction with the Court of Chancery in examining that account. The plaintiffs elected their forum after the decision of the Supreme Court had apprized them of the necessity of going into these accounts: and having failed to establish their claim in a court of law, under such circumstances, the question now presented is, can they re-examine the same subject here as against the defendant Eivers ?

The judgment against Eivers in favor of Montgomery, in the Island of St. Croix, in 1820, cannot be binding upon Eivers, as between him and the plaintiffs in this suit, for a variety of reasons. It was recovered about two years before the hearing before the referees, and was known to the plaintiffs at the time of such hearing, as it appeared in

the depositions used by them on that occasion. It was conclusive as to the state of the accounts, it should have been used and relied on by the plaintiffs for that purpose on that occasion ; and they having neglected to insist upon it, they cannot now ask relief in this court on that account. (*Foster* v. *Wood*, 6 John. Ch. Rep. 87.) Again, the plaintiffs were not parties to the West India suit, and it was brought long after Eivers was apprized of their equitable interest in the contract respecting the protested bill. The decision of that cause could not, therefore, have been binding upon them; and of course cannot now be relied upon as *res adjudicata* in their favor. (*Paynes* v. *Coles*, 1 Mumf. Rep. 373; and per *Roane*, J., 1 Hen. and Mumf. 165.) This question has been fully examined and decided in this court, in the case of *Dale* v. *Rosevelt*, but a few days since. I have examined the statements in the bill and the admissions in the answer of Eivers, and cannot discover any evidence that the decision of the referees in *the suit at law was not perfectly equitable. I cannot, in the absence of all proof, presume that the referees allowed the whole of the credit in the account put in by the attorney of Eivers, when they had before them the depositions of Hancock and Peter Montgomery, showing that it was a partnership transaction; and showing also the actual amount received by Montgomery on account thereof. Neither do I understand from the plaintiff's bill that they are certain that any injustice was done in that suit; but they wish the defendants now to litigate and settle their accounts between themselves, that the plaintiffs and the court may know whether injustice was done in the suit at law; and if it was not, that Montgomery may pay their debt. The allegation in the bill of fraud in the production of the account before the referees, is fully denied by the answer; and this court cannot now disturb the judgment on the report of the referees. Although the plaintiffs were not nominal parties in that suit, they state in their bill that they were the real parties. They prosecuted in the name of Montgomery, as

1828

Southgate
v.
Montgomery.

[*47]

assignees of the chose in action; and the decision must, therefore, in this court, be considered as binding upon them, as if they had been the nominal as well as the real parties on the record; for this court will judiciously notice the fact, that courts of law recognize and protect the rights of such assignees, suing in the name of the assignor.

The reasoning of Judge Radcliffe, in *Leguin* v. *Governeur* and *Kemble*, (1 John. Ca. 436,) is, to my mind, conclusive to show that the judgment of the Supreme Court, on the report of the referees, ought not to be disturbed by reason of anything that appears in this case. And the principles there laid down by him are expressly sanctioned by Ch. J. Spencer, in *Simson* v. *Hart*, in the Court of Errors. (14 John. Rep. 63.) This question was also fully and ably examined by the late Chancellor Kent, in the same case in this court. (1 John. Ch. Rep. 91.)

The plaintiff's bill, as against the defendant, Eivers, must be dismissed with costs. The other defendant having made default at the hearing, the plaintiffs may take such a decree against him as they can abide by.