# Fitzhugh's Heirs *vs* Tyler.

**APPEAL FROM THE LOUISVILLE CHANCERY COURT.**

*Estoppal. Warranties.*

JUDGE GRAHAM delivered the opinion of the Court.

CHANCERY.

Case 127.

September 25.

The complainant's case as presented by the bill.

ON the 24th-April, 1815, Samuel Fitzhugh and Littleberry Carrington, conveyed to Charles Anderson and Joseph Loman, two pieces of land in Louisville, being parts of slip No. 1, and another parcel of ground.

On the next day, Anderson and Loman conveyed the same property to John Gwathmey, in trust, to secure him as their endorser in three notes to Howard, for $1166 66⅔ each, being the purchase money of said land. The note first falling due, was paid. Loman having died, and the second not being paid, it was put in suit, and judgment thereon recovered against Anderson, the surviving obligor. An execution, which issued on this judgment, was levied on the said pieces of ground, with the rope-walk and buildings thereon, and sold. At the sale, Tyler became the purchaser, and obtained a deed therefor from the sheriff.

On the 8th November, 1817, Anderson sold and conveyed to Dennis Fitzhugh, said three parcels of ground, with the rope-walk and buildings, for $3,600. Tyler and Gwathmey united in the deed, and conveyed their interest to said Fitzhugh, who has since that time departed this life. The defendants, now appellants, are heirs and devisees, claiming under the aforesaid conveyances. Tyler now insists that, as Loman was dead, and the legal title in Gwathmey, as trustee, the lots were not liable to execution, and, of course, nothing passed by the sale or deed to Fitzhugh.

Tyler was surety for Anderson and Loman, in a note to Howard, for $1125. Anderson administered on Loman's estate. Judgment was had against Anderson and Tyler on this note. Anderson, as administrator, paid some portion of the debt, and Tyler has been com-

pelled to pay the residue, amounting, principal and interest, when he paid it in 1834, to the sum of $2016 16.

Tyler has exhibited this bill in chancery, insisting that, as Loman's interest could not legally be sold, although the entire ground was conveyed by the sheriff to him, and although he united in the deed to Fitzhugh, yet that Loman's heirs have a right to redeem his moiety of the lots, by paying one half of the last two notes mentioned in the deed to Gwathmey, after deducting therefrom, the reasonable rents and profits of the ground, and that, as the creditor of Loman, having, as his surety, paid the debt, he has a right to be substituted in the place of Loman's heirs, to redeem Loman's half of the ground, upon the same terms upon which his heirs would be authorized to do.

*The answer.*

The defendants resist the prayer of the bill on three grounds: first. That by his deed of 8th November, 1817, to Dennis Fitzhugh, he is estopped from now asserting any claim or lien upon the ground therein conveyed: Second. That the proceeding is not authorized by law; and, third. It is iniquitous.

By the deed of 8th November, 1817, Tyler, Anderson and Gwathmey, for the consideration of $3,600, paid to Anderson, sold and conveyed to said Dennis Fitzhugh the ground in controversy. Anderson bound himself and heirs by a covenant of general warranty. Tyler and Gwathmey specially warranted against themselves and heirs, and persons claiming under them, but against no others whatever; and then the deed says, that the claim of Tyler is under and by virtue of the sheriff's deed to him, and which claim it is the intention of the deed to convey and release to said Dennis and his heirs, and nothing more. This deed, in the first place, conveys the entire ground in controversy, without limitation or restriction. Tyler unites in it. By the words last quoted, there is an attempt to explain what he intends to convey, and that explanation is, that he conveys and releases only the claim which he had under and by virtue of the sheriff's deed to him, and he conveys all that the sheriff conveyed to him, and no more. The sheriff's deed conveys the entire "three

tracts or parcels of land, with all the appurtenances, including the hemp house, rope-walk, and other improvements thereon, except four and a fourth inches of ground," and "also all the estate, right, title, claim and fee of the said Anderson and *Loman,* the said Anderson, survivor as aforesaid, of, in and to the same." The deed from Tyler to Fitzhugh must, therefore, be construed as though he had in it copied the words last quoted. Upon the death of Loman, his undivided interest descended to his heirs. He was dead before suit was brought, and judgment was, of course, not had against him. Taking it as true, that Loman's heirs were not divested of their rights, by proceedings to which they were not parties or privies, and that the sale and conveyance to Tyler did not pass their interest, the question of law to be determined is, does the fact that Tyler joined in the conveyance of the whole, instead of a moiety only of the land, and do the recitals in his deed, and his special warranty, estop him from asserting or setting up Loman's title in this suit?

The principle of estoppal is, that it precludes a party from denying the existence of any fact which, by his own deed, he has admitted, and debars him from asserting title in opposition to that which he has conveyed. "The whole doctrine rests upon the ground of good faith and fair dealing, not merely as regards the parties to the deed or instrument which is to operate as an estoppal, but also as to *bona fide* purchasers and others, who may have been induced to purchase and part with their money upon the faith of recitals, allegations, and other representations contained in the deed or instrument under which they claim. For this reason, the estoppal runs with the land, or the interest therein, which such deed or instrument professes to convey, transfer or release into whose hands soever the same may come, for the protection of interests thus acquired; and the parties to such instruments are estopped and prohibited from alleging or averring any thing which is inconsistent with the instrument itself:" (13 *Wendell,* 189.) In the deed of the sheriff to Tyler, and of the latter, with others, to Fitzhugh, there are recitals of facts, and state-

A party is estopped to deny any fact which, by his own deed, he has admitted—or to assert title to property which he has conveyed; estoppals run with lands and pass to the holder.

ments of titles, inconsistent with the claim now set up. Tyler's deed is not merely a quit claim deed. Beside its recitals, it contains a warranty of title for the whole land, against himself and heirs, and all claiming under him. It does not purport to convey nothing more than Anderson's undivided interest, but purports to convey the whole interest of Anderson and Loman. It will not do to say that, because Loman's heirs are not precluded, neither should be Tyler, their surety, who seeks to be substituted for them. The very same argument would apply to all cases in which a vendor seeks to set up an after acquired title in opposition, and superior to that which he had conveyed. In such case, the owner of the title last set up is not precluded, because he was neither party nor privy; but the vendor is, because of the recitals and covenants in his deed.

The case of *Smith* vs *Mahan, &c.* (7 *Monroe,* 230,) we regard as conclusively determining this case against Tyler. We are of opinion that the Court erred in their decree in his favor.

The decree of the Chancery Court is, therefore reversed, and cause remanded, with directions to that Court to dismiss the complainant's bill, with costs.

*Loughborough, Pirtle & Speed* for appellants; *Guthrie* for appellee.