DAVID TAGGART, RESPONDENT, *v.* ORVILLE RISLEY ET AL., APPELLANTS.

GRANTOR WHEN ESTOPPED.—If the seizin or possession of a particular estate is affirmed in a deed, either in express terms or by necessary implication, the grantor and all persons in privity with him will be estopped from ever afterwards denying such seizin or possession.

DEED CONVEYS AFTER-ACQUIRED TITLE—WHEN.—If the terms of a deed clearly show that it was meant to pass an absolute estate to the land itself, and not merely the estate which the grantor had at the time, it will bind and pass every estate or interest which may vest in him subsequently to its execution, and this though it contain no warranty.

IDEM.—Where a grantor covenants to warrant the premises against all persons claiming by, through or under himself, and he subsequently acquires the legal title to the premises, that legal title will inure to the benefit of the grantee.

*Per Thayer, J., dissenting :*

CONVEYANCE.—The office of our modern conveyances is simply to convey the estate which the grantor has. It is the policy of the law to bind a party to a deed only by express stipulation covenant.

IDEM—EFFECT OF THE WORDS "GRANT, BARGAIN AND SELL."—The words "grant, bargain and sell" in a conveyance do not imply that the grantor is the absolute owner of the premises conveyed.

IDEM—COVENANTS IN.—A covenant to defend the grantee, his heirs and assigns, in the quiet and peaceable possession of the property conveyed, against the claims of the covenantor or persons claiming under him, necessarily refers to existing claims, not to those which the covenantor may thereafter acquire. The object of such a covenant is to defend the grantee against acts done or suffered to be done by the covenantor, whereby the title conveyed may be jeopardized; nor does such a covenant operate as a personal obligation of the covenantor not to buy an outstanding claim against the property, and he is not estopped by such covenant to buy and assert such an outstanding claim. Matter in a deed to operate as an estoppel must be of such a character that, if untrue, the party alleging it would be liable in some form of action, either in law or in equity, to respond in damages to the party injured for a covenant broken or for a deceit and fraud.

APPEAL from Multnomah County.

The facts are stated in the opinion of the Court.

*Hill, Thayer and Williams*, for Appellants.

A special covenant for quiet enjoyment, limited to the claims of the covenantor and those claiming under him, does not estop such covenantor to afterwards acquire and assert against his covenantee an adverse title which was in a third person at the time the covenant was made, unless such third person derived his title from the covenantor. (Rawle on Covenants, 413; 3 Washb. on Real Prop. 665; *Lownsdale* v. *Portland*, 1 Ogn. 395; *Farnum* v. *Loomis*, 2 Ogn. 29; *Jackson* v. *Bradford*, 4 Wend. 622; *Comstock* v. *Smith*, 13 Pick. 116; *Miller* v. *Ewing*, 6 Cush. 34; *Lamb et al.* v. *Burbank*, 1 Sawyer, 227; *Clark* v. *Baker*, 14 Cal. 612.)

If a deed contains false representations, even in the form of recitals, that the grantor was seized of the premises in fee, the grantor will be estopped to take advantage of the falseness of his representations and claim the land against his grantee who relied upon their truth in making his purchase. The estoppel in such case is based upon the false representations, and not upon the covenant. (3 Washb. on Real Prop. 468; *Douglass* v. *Scott*, 5 Ohio, 198; *Clark* v. *Baker, supra.*) If in such case the grantor was permitted to assert the after-acquired title against his grantee, the grantee would immediately have his action against the grantor for the fraud. (*Culver* v. *Avery*, 7 Wend. 380; *Haight* v. *Hagh*, 19 N. Y. 464.) But the Courts settle the matter at once by applying the doctrine of estoppel, thus avoiding circuity of action, and it is upon this principle of avoiding circuity of action that the doctrine of passing title by estoppel is based. (*Jackson* v. *Bradford, supra; Jackson* v. *Waldron*, 13 Wend. 178; *Bush* v. *Cooper*, 26 Miss. 599.) The words in the granting clause—"grant, bargain, sell, alien, remise, release and convey"—imply nothing except an intention to pass whatever title the grantor had (Rawle, 434); while the covenant which follows, and which is to be considered in construing the deed (*Cole* v. *Hawes*, 2 Johns. Cas. 203), plainly indicates that the grantor did not intend to become a guarantor of the goodness of the title.

*Mitchell & Dolph,* for Respondent.

Where a deed bears upon its face evidence that the grantor intended to convey, and the grantee expected to become invested with an estate of a particular description, the grantor will be estopped from ever afterwards denying that he was the owner of the particular estate at the time of the conveyance, whether there are any recitals or covenants in the deed or not. (*Lamb* v. *Davenport,* 1 Sawyer, 609; 2 Washb. on Real Prop. 477; Rawle on Cov. 455; *Doe* v. *Oliver,* 2 Smith L. Cas. 738; *Van Rensselaer* v. *Kearney,* 11 How. 325; *Clark* v. *Baker,* 14 Cal. 629; *Jackson* v. *Waldron,* 13 Wend. 178; *Dennison* v. *Ely,* 1 Barb. 610; *Fitzhugh's Heirs* v. *Tyler,* 9 B. Monroe, 561; *Fairbanks* v. *Williamson,* 7 Greenleaf, 96; *White* v. *Erskine,* 1 Fairfield, 306; *Kimball* v. *Blaisdell,* 5 N. H. 533; *Trull* v. *Eastman,* 3 Met. 121; *Bean* v. *Welch,* 17 Ala. 722; *Wright* v. *Reynolds,* 24 Miss. 689.)

It is apparent from the face of the deed that the parties were dealing with the fee. The covenant for quiet enjoyment is conclusive upon the question as to what estate was intended to be conveyed, and indicates that the intention was to convey the land absolutely. (*Doe* v. *Oliver,* Smith's L. Cas. 740; *Smith* v. *Baker,* 1 Young and Collier Ch. 223; *Robertson* v. *Nelson,* 38 N. H. 48; *Chauvin* v. *Wagner,* 18 Mo. 531.)

The covenant to warrant and defend the grantee, his heirs and assigns in the peaceable and quiet possession of the lot, extends to all acts of the covenantor, whether tortious or under claim of title. (Rawle on Cov. 167, 170; *Sedgwick* v. *Hollenback,* 7 John. 376; *Mayor of New York* v. *Mabie,* 3 Kern. N. Y. 156; *Crosse* v. *Young,* 2 Shower, 425.)

The covenant in this deed is not simply a covenant of *non claim;* but even as a covenant of *non claim* it would estop Risley from asserting an after-acquired title. (*Gee* v. *Moore,* 14 Cal. 472; *Kimball* y. *Blaisdell,* 5 N. H. 533; *Trull* v. *Eastman,* 3 Met. 121; *Gibbs* v. *Thayer,* 6 Cush. 33; *Newcomb* v. *Presbry,* 8 Met. 406.) A covenant of warranty against the grantor and his heirs will estop them from setting up an after-acquired title. (*Sweet* v. *Green,* 1 Paige, 473.)

By the Court, McArthur, J.:

This suit was instituted by Taggart against Risley and others, to quiet the title to lot 7, in block 212, in the city of Portland, and to compel the execution of conveyances thereof by the appellants. It appears from the pleadings that, on June 25, 1850, D. H. Lownsdale, being then in possession of the lot aforesaid, executed a deed conveying all his interest in said lot to W. W. Chapman, wherein he covenanted to warrant and defend the same to said Chapman, his heirs and assigns, against all persons except the United States; and also, that should he afterwards obtain title to said lot *from the United States,* he would convey the same to said Chapman, his heirs and assigns, by deed of general warranty. On November 8, 1852, Chapman executed a conveyance of said lot to Risley, and he (R.), on December 18, 1860, for a valuable consideration, sold the said lot to Charles Goodnough, and executed to him a deed therefor. Risley's wife joined in this conveyance, which reads as follows:

"This indenture, made the 18th day of December, 1860, between Orville Risley and Amelia, his wife, of the county of Multnomah and State of Oregon, of the first part, and Charles Goodnough, of the county of Multnomah and State aforesaid, of the second part, witnesseth, that the said parties of the first part, for and in consideration of the sum of eight hundred dollars, lawful money of the United States to them in hand paid by the said party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold, aliened, remised, released and conveyed, and by these presents do grant, bargain, sell, alien, remise, release, and convey, unto the said party of the second part, and to his heirs and assigns forever, the following described property, to wit: Lots No. 7 and 8, in block No. two hundred and twelve (212), in the city of Portland, in the county of Multnomah and State of Oregon, together with all and singular the hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and also

all the estate, right, title, interest, property, possession, claim and demand, as well in law as in equity, of the said parties of the first part of, in and to the above-described premises, and every part and parcel thereof, with the appurtenances, to have and to hold, all and singular, the above-described premises, together with the appurtenances, unto the said party of the second part, his heirs and assigns forever.    And the said parties of the first part, for themselves and their heirs, the said premises, in the quiet and peaceable possession of the said party of the second part, his heirs and assigns, against the said parties of the first part and their heirs, lawfully claiming, or to claim, the same, shall and will warrant, and, by these presents, forever defend.

(Signed)                    " ORVILLE RISLEY.   [SEAL.]
                            " AMELIA  RISLEY.   [SEAL.]"

This deed was duly witnessed and acknowledged.    The interest thus acquired by Goodnough in and to said lots passed by a chain of regularly executed mesne conveyances down to Taggart, who purchased on November 8, 1870.    On May 30, 1861, Lownsdale, having obtained title to the undivided one-fifth of said lot No. 7, from the United States, and of another undivided one-fifth from Isabella Gillihan, executed to Risley a deed of quit-claim to said lot.    Under this deed Risley claims to be the owner of one undivided one-fifth of said lot—that of said Isabella Gillihan.

Risley, in his separate answer, denies the deed from himself to Goodnough, as alleged, and pleads Lownsdale's deed of June 25, 1850, and his own deed to Goodnough of December 18, 1860, attaching them as exhibits.    He also avers that Lownsdale had no interest in, or right to, the lot in controversy when he executed the deed of June 25, 1850, except the mere naked possession, and did not pretend to have any greater interest.    That he (L.) did not afterwards obtain title from the United States, except for the undivided one-fifth of said lot, and was not bound by his covenant, in the deed of 1850, to convey to Chapman,

or his assigns, any more than said one-fifth, and that he
(Risley) had no interest beyond the said undivided one-fifth
when he and his wife executed the deed to Goodnough.
That afterwards, in 1861, by deed from Lownsdale, he (Ris-
ley) became the owner of the undivided one-fifth which
Lownsdale had acquired from Isabella Gillihan and that
his right thereto was unaffected by his deed to Goodnough.

A demurrer was interposed to this answer, which, after
argument, was sustained, and from the order sustaining the
demurrer, and the decree thereon rendered, the said Risley
appeals.

The deed of June 25, 1850, is simply a deed of release
and quit-claim with the addition of the covenants mentioned
above.

The main question in this case is briefly this : Does the
deed from Risley to Goodnough estop Risley to claim the
after-acquired *one-fifth,* which Lownsdale acquired from Gil-
lihan and conveyed to Risley after the execution of the
deed to Goodnough by Risley and wife ? After much re-
flection a majority of the Court has reached the conclusion
that, from the language employed in the deed of Decem-
ber 18, 1860, the parties were evidently dealing with the
fee, and that Risley did not intend merely to convey lots 7
and 8, in block 212, by way of release or quit-claim, but
that he intended to convey, and the grantee expected to
become invested with, the very land itself, as an entirety,
with the absolute ownership thereof with the fullest possible
estate, the fee simple. It is important at this point to note
again that there is in this deed the following covenant :
"And the said parties of the first part, for themselves and
their heirs, the said premises, in the quiet and peaceable
possession of the said party of the second part, his heirs
and assigns, against the said parties of the first part and
their heirs, lawfully claiming or to claim the same, shall
and will warrant and by these presents forever defend."

It cannot but be considered that the claim which Risley
now seeks to set up under the confirmatory deed from
Lownsdale, of May 30, 1861, is entirely inconsistent with
his own deed of December 18, 1860; and although there are

no recitals or covenants of title in the deed of December 18, 1860, yet, under the authorities, Risley is estopped to assert that any outstanding title existed inconsistent with what he undertook to sell and convey to Taggart, more especially in view of the personal covenant not to disturb the grantee in his possession.

In *Van Rensselaer* v. *Kearney* (11 How. 325), the Court, after reviewing a number of English and American cases, says: "The principle deducible from these authorities seems to be that whatever may be the form or nature of the conveyance used to pass real property, if the grantor sets forth on the face of the instrument, by way of recital or averment, that he is seized or possessed of a particular estate in the premises, and which estate the deed purports to convey; or, what is the same thing, if the seizin or possession of a particular estate is affirmed in the deed, either in express terms or by necessary implication, the grantor and all persons in privity with him shall be estopped from ever afterwards denying that he was so seized and possessed at the time he made the conveyance. The estoppel works upon the estate, and binds an after-acquired title as between parties and privies. The reason is that the estate thus affirmed to be in the party at the time of the conveyance, must necessarily have influenced the grantee in making the purchase, and hence the grantor and those in privity with him, in good faith and fair dealing, should be forever thereafter precluded from gainsaying it. The doctrine is founded, when properly applied, upon the highest principles of morality, and recommends itself to the common sense and justice of every one. And although it debars the truth in the particular case, and therefore is not unfrequently characterized as odious, and not to be favored, still it should be remembered that it debars it only in the case where its utterance would convict the party of a previous falsehood; would be the denial of a previous affirmation upon the faith of which persons had dealt, and pledged their credit or expended their money. It is a doctrine, therefore, when properly understood and applied, that concludes the truth in order to prevent fraud and falsehood,

and imposes silence on a party only when in conscience and honesty he should not be allowed to speak."

Thus it will be seen that the ancient doctrine that estoppel grows out of warranty has been departed from by the Supreme Court of the United States, and it is now held that a deed without warranty may operate as an estoppel, in order to prevent a failure of the purpose with which it was executed. (*Van Rensselaer* v. *Kearney, supra; Fitzhugh's Heirs* v. *Tyler,* 9 B. Mon. 559.)

The question is one of intention (3 Met. 121; 6 Cush. 33), and the whole instrument must be taken together, and effect must be given to its meaning as derived from each and every part of it. If the terms of a deed plainly show that it was meant to pass an absolute estate to the land itself, and not merely the estate which the grantee had at the time, it will bind and pass every estate or interest which may vest in him subsequently to its execution, though it contain no warranty. (*Fairbanks* v. *Williamson,* 7 Greenleaf, 96; *White* v. *Erskine,* 1 Fairfield, 306; *Kimball* v. *Blaisdell,* 5 N. H. 533; *Trull* v. *Eastman,* 3 Met. (Man.) 121; *Bean* v. *Welch,* 17 Ala. 772.)

In *Doe* v. *Oliver* (2 Smith's Ldg. Cases, 637), it is said that these decisions abandon the technical ground, taken in some of the earlier cases, that estoppel grows out of warranty, and rest it upon the broader basis of giving effect to the intention of the parties as expressed in the deed. No reason exists, under this view of the law, for attributing a more conclusive effect to the covenants in a deed than to any other portion of its contents.

Nor can Risley avoid the consequences of his covenant for quiet enjoyment. He and his heirs are certainly bound by that covenant; and as limited covenants of this character are good as against the persons named therein, he is estopped to set up the after-acquired title, for by being permitted to do so he would disturb the possession and enjoyment of his own grantee. Even in the case of a quit-claim deed the law is that where the grantor covenants to warrant the premises against all persons claiming by or under himself, and he subsequently acquires the legal title to the

premises, that legal title will inure to the benefit of the grantee. (*Sweet* v. *Green*, 1 Paige, 47.)

Decree affirmed.

THAYER, J., dissenting:

It appears from the pleadings in this case that on the 25th day of June, 1850, one D. H. Lownsdale, being then in the possession of a certain tract of land embracing the lot in question, to wit, lot No. 7, in block No. 212, in the city of Portland, conveyed by deed in writing, under seal, to one W. W. Chapman, all his right, title and interest in said lot, and covenanted in and by said deed to warrant and defend the same to said Chapman, his heirs and assigns, against all persons, except the United States, and that should he afterwards obtain a title thereto from the United States he would convey the same to said Chapman, his heirs and assigns, by deed of general warranty; that on the 8th day of November, 1852, said Chapman conveyed to Risley, the appellant herein, said lot; that on the 18th day of December, 1860, said Risley and his wife conveyed said lot to one Goodnough by deed of that date, the granting clause of which contains in substance the following language: "That the said parties of the first part, for and in consideration of the sum of eight hundred dollars, etc., grant, bargain, sell, alien, remise, release and convey unto the said party of the second part, and his heirs and assigns forever, lots 7 and 8, block 212, etc., together with all and singular the hereditaments and appurtenances thereunto belonging, or in any way appertaining, and all the estate, right, title and interest, property, possession, claim and demand, as well in law as in equity, of the parties of the first part, of, in and to the above-described premises, and every part and parcel thereof, with appurtenances;" and which said deed also contains the following covenant: "And the said parties of the first part (Risley and wife), for themselves and their heirs, the said premises, in the quiet and peaceable possession of the said party of the second part, his heirs and assigns, against the said parties of the first part and their heirs, lawfully claiming or to

claim the same, shall and will warrant, and, by these presents, forever defend."

· That the interest which Goodnough acquired in said lot, passed by a chain of mesne conveyances, duly executed, to Taggart, the respondent herein, who purchased in November, 1870; that said Daniel H. Lownsdale had no interest in, or right to, said lot, when he made the deed of June, 1850, and only acquired from the United States one-fifth interest therein; that in May, 1861, said Lownsdale having acquired from one Isabella Gillihan another one-fifth interest in said lot, executed to appellant a quit-claim deed of the same.

It is admitted that the deed from Risley and wife to Goodnough, executed December, 1860, operated to pass the fifth interest in said lot which Lownsdale acquired from the United States, and the respondent claims that appellant is estopped by said deed from claiming title to the fifth interest acquired from Lownsdale in May, 1861. This presents the only question in the case, and it resolves itself into this proposition: Does the deed from Risley and wife to Goodnough, of December, 1860, operate to estop Risley from asserting the title which he acquired from Lownsdale in May, 1861?

It is conceded that when a deed of real property contains an averment or recital, that the grantor is the owner of a particular estate therein, or of any other fact that becomes material, said grantors will ever after be estopped from disputing said averment; and it is also conceded that when a deed to real property contains a general covenant of title, it will operate as an estoppel against an after-acquired title included in the terms of the covenant. But it is denied that the appellant is estopped from claiming the after-acquired fifth interest in said lot, obtained from Lownsdale under the deed of May, 1861, in consequence of any terms, recital, averment, or covenant, contained in the deed of December, 1860. The language of the granting clause, in said last-mentioned deed, is very strong. It contains more words than necessary to pass the actual interest Risley had; but does it, in legal effect, purport to convey anything more

than the interest Risley then had? The authorities seem to be somewhat conflicting upon the question, as to whether there is a difference between a deed granting the right, title and interest of the grantor, and one which grants the premises. The office of our modern conveyances is simply to convey the estate which the grantor has. At common law, such conveyance would only operate to raise a use; but, by form of the statute of uses, the use was transferred into possession, and the interest of the *cestui que use* into a legal estate.

There was also at common law, in certain deeds, an implied covenant of title. This, however, depended upon the phraseology of the granting clause. When the words "I have given" *(dedi)* were used certain covenants were implied, but not so when the word grant *(concessio)* was employed (2 Caine's R. 188); but our statutes have abolished implied covenants in all cases (Mis. Laws, ch. 6, § 6), and have provided that a deed of quit-claim and release, of the form in common use, shall be sufficient to pass all the interest which the grantor could lawfully convey by a deed of bargain and sale.

It seems to me from principle, as well as from express enactment of statute, that it is the policy of the law to bind a party to a deed only by express stipulation covenant. The office of a deed is ordinarily performed when it operates to transfer to the grantee the existing title of the grantor to the thing granted.

Under this view of the case, I cannot believe that the words in the granting clause of the deed of December, 1860, show any intent to convey from Risley and wife to Goodnough any better or further title than the grantor then had.

I cannot imagine how there could have been any other interest, unless it be claimed that the terms "grant, bargain and sell," etc., used in said deed in reference to the property in question, imply that the grantors were the absolute owners of said property, and this I would regard as contrary, at least, to the spirit of the provisions of our statute, and to the principles of law on that subject.

The next question I propose to consider is as to the effect of the covenant contained in the deed of December, 1860.

This is a special covenant of quiet enjoyment, not as against all the world, but against the grantors and their heirs lawfully claiming or to claim the same. It was contended by the counsel for the respondent, and with much reason, that the appellant undertook, by the terms of the covenant, to warrant and defend Goodnough, his heirs and assigns, against any claim the appellant, or his heirs, might attempt to assert; that it would be a violation of the undertaking in that behalf to buy an outstanding title and attempt to claim under it.

If it could be reasonably supposed that the covenant referred to was intended as an indemnity against personal acts of the covenantor, there would be more force in the position. But a covenant in a deed to real property must, it seems to me, be presumed to relate either to the condition of the title or to a further assurance regarding it; at least I am of the opinion that the covenant in question relates in some form to title, and was not intended as a personal engagement. The question then is, what is its legal effect? If it had been a general covenant to warrant and defend the grantee in the quiet and peaceable possession of the lot in question, it would undoubtedly operate as an estoppel against the appellant and all persons claiming under him. But have we the right to give a covenant of the description of the one under consideration the same legal effect? I cannot so conclude. The covenant in question only is to defend the grantee, his heirs and assigns, in the quiet and peaceable possession of the property against the claims of the covenantor, or persons claiming from him, and must necessarily mean existing claims, not claims which the covenantor might thereafter acquire. That could not have been the intention, for it would certainly be no more damaging for the covenantor to acquire an outstanding claim and assert it, than for the holder of such claim to assert it; and I think it not only a reasonable construction, but the obvious intention of the parties, that appellant

should only warrant and defend against claims he had created—in other words, against his own act done or suffered, whereby the title conveyed might be jeopardized. He had purchased from Chapman the lot in question, but acquired no title except actual possession and the conditional covenant of Lownsdale before mentioned, and Lownsdale never acquired any title to said lot from the United States except one-fifth interest.

In this condition of affairs, the appellants made the deed of December, 1860, to Goodnough, in which they bound themselves concerning the title by the covenant contained therein. If it had been intended by the parties that appellants should be bound to defend Goodnough, his heirs and assigns generally, and against every one, why did they not have a general covenant to that effect inserted in said deed? It appears very plain to me that the parties to that deed only intended to pass to Goodnough, his heirs and assigns, the unincumbered title, interest or right which Risley had acquired from Chapman, and undoubtedly a party might be bound by personal obligation not to buy any outstanding claim against property. But I do not believe that is the effect of this covenant, or was so intended by the parties. If I am correct in this, then the appellant can assert the claim to the fifth interest in said lot which he purchased from Lownsdale without violating the terms of the covenant in question, and the deed to Goodnough cannot in any event operate as an estoppel. The general theory upon which the law of estoppel by deed is applied, is to prevent circuity of action, and I believe this to be the true doctrine.

Senator Tracy, in the case of *Jackson* v. *Waldron* (13 Wend. 208), says: "That the best, most rational, and only general principle which can be extracted from the numerous and contradictory decisions upon the subject is, that in order for a matter to operate as an estoppel in a deed, it should be such matter, and so alleged, that if untrue, the party alleging it would be liable in some form of action, either in law or equity, to respond in damages to the party injured for a covenant broken, or for a deceit and fraud."

This view, to my mind, is a very satisfactory test. I am

aware, however, that it has been attempted recently to place the rule on different grounds—to place it upon the basis of giving effect to the intentions of the parties as expressed in the deed, and I would have no objection to its application in such cases, provided such intentions were clearly expressed; but to speculate as to what the parties to a deed intended to convey in the absence of averment, recital or covenant, would be uncertain indeed. In the case under consideration, there would be a breach of the covenant in question, had Lownsdale made the claim to the fifth interest, instead of transferring it to the appellant, and I cannot think it is any such breach for the appellant to acquire it and assert a claim thereto. This is so, at all events, if the construction I place upon the covenant is correct. The deed could not, therefore, operate as an estoppel upon the principle of avoiding circuity of action, and if claimed upon the other ground, it is necessary to establish that the parties to the deed intended to convey this after-acquired interest, and that such intention is expressed in the deed. Viewing the transaction by the light of surrounding circumstances, as shown by the pleadings in the case, and considering the various parts of the deed when taken together, I do not think such intention is shown. The question is by no means free from doubt, but I think the doubt arises more from the peculiar, and I might say awkward, language employed in the deed, than from any embarrassment in construing covenants of this character. A covenant against a grantor has had a long and well-established signification, and I am not aware that the Courts have attempted to construe said covenant as meaning anything more than I have indicated; that is, that the grantor and his heirs will defend against his past acts. The parties to this deed have chosen that kind of covenant, and I do not think its effect should be extended unless the language is unmistakable, and, as I have before remarked, it could not have been the intention of the parties that the grantor undertook merely to disqualify himself and his heirs from asserting an outstanding title, leaving all other persons free to do so. When the appellant procured title from Lowns-

dale of the fifth part of the lot in question, he succeeded to all the rights of Lownsdale respecting it, and if Lownsdale or his grantor had the legal right to demand this interest, why should not the appellant be permitted to do so?

For the foregoing reasons the decree of the Court below should be reversed.