## HARDENBERG v. RAY et al.

(*Circuit Court, D. Oregon.* January 23, 1888.)

1. WILLS—RESIDUARY LEGACY—AFTER-ACQUIRED PROPERTY.
   A residuary devise of real property, under the Oregon statute of wills, (section 1,) may and will pass after-acquired property, if such appears to have been the intention of the testator.

2. SAME.
   H., an unmarried man living in Portland, made his will, and, after making two specific devises of real property situate in New York, devised and bequeathed to his sister Ellen E. Ray all the rest of his lands wherever situate and all his "personal property and estate of whatever kind or nature," after which he purchased other real property, of which he died seized, leaving brothers, including the plaintiff, not mentioned in his will. *Held,* that the intention of the testator to make his sister Ellen his residuary devisee was manifest, and that she took the after-acquired property under the devise in the will.

(*Syllabus by the Court.*)

At Law. Action to recover possession of real property.

*F. A. E. Starr* and *Benton Killin,* for plaintiff.

*James K. Kelly, C. E. S. Wood, George H. Williams,* and *Robert L. McKee,* for defendants.

DEADY, J. This action is brought to recover possession of the south half of lots numbered 2 and 7, in block 39, of Portland, according to the plat thereof, alleged to be worth over $5,000.

The plaintiff is a citizen of the state of New York. The action was brought against Charles Sliter, J. C. Miller, and W. H. West, the persons in the possession of the premises, who answered that they were in possession only as tenants of Thomas L. Ray, Rachel L. Ray, H. E. Ray, Mary E. Arbuckle, John De Witt Ray, and Sarah A. Ray, giving their residence, and asking that they might be substituted as defendants in the action.

A defendant may answer that he is in possession only as the tenant of another, naming him and his place of residence, but it is both impertinent and improper to go further and ask that such person be made defendant. When he declines the controversy, as he may do, he should not further meddle with it. See *McDonald v. Cooper,* 32 Fed. Rep. 745.

These parties were afterwards made defendants, in place of the tenants, on their own motion, and answered, admitting they were all citizens of Oregon, excepting John De Witt Ray, who is a citizen of Illinois, and Sarah A. Ray, who is a citizen of New York.

It is alleged in the complaint that the plaintiff is the owner in fee-simple of an undivided one-third of the premises, and entitled to the immediate possession thereof. The answer contains a denial of the plaintiff's ownership of any interest in the premises, or his right to the possession thereof; and also a defense to the effect that the defendants are the own-

ers in fee-simple of the premises. The reply contains a denial of the defendant's ownership of the premises except the undivided one-sixth thereof.

By a stipulation duly filed the parties consented that the cause might be tried by the court without the intervention of a jury.

It was also stipulated that a certain agreed statement might be used on the trial as evidence, from which the following facts appear:

On May 15, 1872, Peter De Witt Hardenberg made and published his last will and testament, whereby he devised and bequeathed (1) to Thomas H. and Jacob H. Tremper, of Ulster county, New York, and Thomas L. and John De Witt Ray, of Belvidere. Illinois, all his interest in a certain farm in said county; (2) to Catherine L. Tremper, of said county, all his lands lying therein; and (3) to Ellen E. Ray, of said Belvidere, "all my right, title, and interest in and to all my lands, lots, and real estate lying and being in the state of Oregon, or elsewhere, except as aforesaid, also all my personal property and estate of whatever kind or nature."

After the death of the testator—the time of which is not stated—this will was duly admitted to probate, and, as such, is now in full force and effect.

On January 9, 1882, the testator purchased and became the owner in fee-simple of the premises in controversy, and so continued until his death.

At his death the testator left the following heirs: T. Rutzen, Herman R. and Philip L. Hardenberg, his brothers; Catherine L. Tremper, his sister; Mary E. Arbuckle, Samuel A., Hylah E., Rachel L., Thomas L. and John De Witt Ray, the children and only heirs of Ellen E. Ray, foresaid, who died in December, 1873; and Rachel F. Lefevre, the aughter and only heir of a sister of the testator's, before that time deased.

When this action was commenced the defendants Mary E. Arbuckle, Thomas L., Rachel L., and Hylah E. Ray were citizens of the state of Oregon, the defendant, John De Witt Ray was a citizen of Illinois, and Sarah A. Ray was a citizen of New York.

On the trial, the plaintiff proved that, prior to the commencement of the action, he demanded of the defendants to be let into possession with them, which they refused; and that, on September 24, 1885, Rachel F. Lefevre, for the consideration of one dollar, conveyed and assigned all her interest in the estate of the deceased to Herman R. Hardenberg, the plaintiff, while the defendants proved that said Rachel F., on November 3, 1886, in consideration of $200, released and quitclaimed to them all her interest in the premises in controversy. It was also proved that the testator owned other valuable real property in Portland, at the time of making the will, of which he died seized.

It is objected *in limine*, that the court is without jurisdiction of the case, because two of the present defendants—John De Witt Ray and Sarah A. Ray—are not citizens of Oregon, but of Illinois and New York, respectively. If this objection is well taken, it only goes to the jurisdic-

tion of the court over these two defendants. The parties being tenants in common of the property, the plaintiff has a separate cause of action against each of them, in respect to the ouster or deprivation of possession, on which he may sue them separately or jointly. Code Civil Proc. § 91.

Prior to the judiciary act of March 3, 1887, (24 St. 552,) a person could only be sued in a circuit court in the district whereof he was an inhabitant, or in which he might be found at the commencement of the action. But it has always been held that this exemption is the personal privilege of the defendant, which he may waive and does waive by a voluntary appearance. *Dunlap* v. *Stetson*, 4 Mason, 360; *Toland* v. *Sprague*, 12 Pet. 331; *Kendall* v. *U. S.*, Id. 623; *Herndon* v. *Ridgway*, 17 How. 425.

By the act of 1887 a person may be sued in a circuit court in the district in which he or the plaintiff resides; but he can no longer be sued in any district in which he may be found. But I see no reason why the old rule of construction should not apply, so that if a party defendant voluntarily appears in an action brought in a district other than that in which he or the plaintiff resides, he may do so, and the court thereby acquire jurisdiction of his person. In such case, the plaintiff and John De Witt Ray, being citizens of different states and the latter having voluntarily appeared in the action, the court would acquire jurisdiction.

But as to Sarah A. Ray this suggestion is not applicable. She is a citizen of the same state with the plaintiff, and the court has not and cannot acquire jurisdiction over a controversy between such parties. Where the jurisdiction of the court depends on the diverse citizenship of the parties, and such diversity does not exist, consent cannot confer it.

But I do not think this objection well taken as to either of these parties on another ground.

When the summons in this action was served on the original defendants,—Sliter, Miller, and West,—the persons in possession, the court acquired jurisdiction of the controversy and the parties to the action, and no subsequent change in the citizenship or *personnel* thereof can affect such jurisdiction. As was said by Mr. Chief Justice MARSHALL in *Mollan* v. *Torrance*, 9 Wheat. 539: "The jurisdiction of the court depends on the state of things at the time of the action brought, and, after vesting, it cannot be ousted by subsequent events." To the same effect is the ruling of the court in *Dunn* v. *Clarke*, 8 Pet. 1; *Clarke* v. *Mathewson*, 12 Pet. 164; *Whyte* v. *Gibbes*, 20 How. 542. For instance, it is held in *Clarke* v. *Mathewson, supra*, that where the plaintiff, a citizen of Connecticut, died pending a suit in the circuit court for the District of Rhode Island against citizens of the latter state, his administrator, also a citizen of Rhode Island, could continue the suit. In delivering the opinion of the court, Mr. Justice STRONG said:

"The parties to the original suit were citizens of different states, and the jurisdiction of the court completely attached to the controversy; having so attached, it could not be divested by any subsequent events, and the court had a rightful authority to proceed to a final determination of it. If, after the commencement of the suit, the original plaintiff had removed into, and be-

come a citizen of, Rhode Island, the jurisdiction over the cause would not have been divested by such change of domicile."

The change of parties defendant in this case is allowed for the benefit of the landlord, the present defendants, and was made at their instance. The jurisdiction of the court had completely attached before they were substituted for the original defendants, and so far as the question of jurisdiction is concerned, the parties to the action are not changed, and they stand in it as the mere representatives or substitutes of such defendants, the same as an administrator is of his intestate.

The objection to the jurisdiction is not sustained.

The next question in the case is whether the property in controversy, having been acquired by the testator after the making of his will, passes thereby to the residuary devisee or descends to his heirs.

The contention of the plaintiff is that, under the Oregon statute, the will speaks from the making thereof, and not from the death of the testator, and, therefore, as to after-acquired property, he is deemed to die intestate, and the same goes to his heirs; and even admitting that the testator had the power under the statute to devise all the lands of which he might die seized by a will anterior in date to the acquisition thereof, such after-acquired estate would not pass thereby, unless the intention that it should was plainly expressed in the will.

On the contrary, the defendants contend that the devise to their ancestor Ellen E. Ray should be held to speak from the death of the testator, and thus include all the property not otherwise disposed of, whereof he died seized; and that it is manifest from the language of the devise and the circumstances of the testator that such was his intention.

The Oregon statute of wills was passed at the first session of the territorial legislature, on September 26, 1849, (Hamilton Laws, 274, 1850–1;) and was taken from the Revised Statutes of Missouri.

The "commissioners to prepare a code of laws for the territory," appointed under the act of January 12, 1853, (Sess. Laws 57,) reported the same for adoption, with some unimportant alterations, and it was thus re-enacted on December 15, 1853, (Code 1853–4, p. 354,) and took effect May 1, 1854. By the repealing act, supplemental to the Code of Civil Procedure, passed October 17, 1862, (Sess. Laws 124,) certain sections of the act relating to procedure, namely, sections 6, 15 to 23, and 27 to 34 inclusive, and 49 and 52, were repealed, because the matter was included in said Code, then just passed.

Section 1 of the act gives the power to make a will. It reads as follows: "That every person of twenty-one years of age and upwards, of sound mind, may, by last will, devise all his estate, real and personal, saving to the widow her dower."

The colonists on the Atlantic coast brought with them from England the common law, and, with some modifications, mostly political, adopted it as the basis of their social fabric and jurisprudence. Two hundred years later their descendants brought this "Code of matured ethics and enlarged civil wisdom" (1 Kent. Comm. 342) across the plains to Oregon, where, on June 27, 1844, it was formally declared by the legislature of

the provisional government to be "the law of the land," with the quali-
fications following:

"All the statute laws of Iowa territory, passed at the first session of the
legislative assembly of said territory, and not of a local character, and not in-
compatible with the condition and circumstances of this country, shall be the
law of this government, unless otherwise modified; and the common law of
England, and principles of equity, not modified by the statutes of Iowa or of
this government, and not incompatible with its principles, shall constitute a
part of the law of the land." Laws 1843-49, p. 100.

At common law no greater estate in lands, than for a term of years,
which was regarded as personal property, could pass or be conveyed by
will. In time, however, the law was evaded by making a feofment to the
use of the feofor's last will, and he being considered seized of the use and
not the land, could, in effect, devise it by devising the use. But the
statute of uses (27 Hen. VIII.) by uniting the land to the use made this
device of no further avail. And this led, within five years, to the enact-
ment of the famous statute of wills, (32 Hen. VIII.) by which any per-
son "having" land held in socage might dispose of the same by will, or,
if held by knight's service, might in like manner dispose of two parts of
the same. 1 Jarm. Wills, 58; 1 Redf. Wills, 2; 4 Kent. Comm. 501;
2 Bl. Comm. 374.

A devise of lands under this statute was held by the English courts to
be a species of conveyance; and as a person could not at common law
convey what he did not then have, it followed, as a matter of course,
that lands acquired by the testator after the making of his will could not
pass thereby. The fact that the English statute only conferred this tes-
tamentary power on persons "having" lands also influenced the result.
By implication the statute was construed as if it read, "No person can
devise land unless he has it at the time of making his will." This con-
clusion was doubtless promoted and strengthened by the prevailing sen-
timent of the country, that regarded the testamentary disposition of real
property as a species of injustice to the heir, whose right to the posses-
sion on the death of the ancestor was considered equal to that of the an-
cestor himself.

This continued to be the law of England until the passage of the act
of 1 Vict. c. 26, (1837,) by which (section 3) any person was authorized
to dispose of by will all real property to which he was entitled "at the
time of his death;" and (section 24) it was provided that every will shall
be construed with reference to such property, "to speak and take effect"
as at the death of the testator, "unless a contrary intention shall appear
by the will."

In my judgment the statute of Henry VIII. is no part of the common
law, and, as such, did not become a part of the law of the English colo-
nies. It is conceded that the common law of England, as it stood prior
to the accession of James I., together with the statutes passed in aid
thereof, was brought to this country by the colonists, and became the
basis of the law of the land. 1 Kent. Comm. 342, 472; Story, Comm.
§§ 147, 157, 158.

The statute of wills, so far from being in aid of the common law, was in derogation of it, and *pro tanto* superseded it.

But the statute was a step in advance in the direction of the political renaissance that was then awakening the civilized world, and it was specially or substantially adopted in most of the colonies, but with it the construction put thereon by the English courts.

Soon after the Revolution, in obedience to the growing sentiment in favor of limiting and reducing restraints on the disposition of real property, the legislatures of the several states began to enlarge the power of testamentary disposition of the same. Virginia led off in 1785. By an act passed that year it was expressly provided that any one might devise any interest in lands which he might have at the time of his death. *Smith* v. *Edrington*, 8 Cranch, 66.

And, now, either by statute or judicial construction, the rule is established in most of the American states, in accordance with that prescribed in the English statute of Victoria I., that a will is deemed to speak from the death of the testator, and shall operate on all his estate at that time, so far as its terms are applicable, unless his intention appears to have been otherwise. 1 Redf. Wills, 379, note 2. But in a number of the states, including Massachusetts and New York, while the power is given in express terms to devise after-acquired property, the same does not pass thereby unless it appears that it was the intention of the testator that it should. 3 Jarm. Wills, (5th Amer. Ed.) 742, note 5. In the brief of counsel for the plaintiff it is stated that the statutes of the states of Oregon, Louisiana, and Arkansas, are the only ones that contain no provision on the subject of after-acquired property, nor the time when a will is deemed to speak. But in the note to 3 Jarman, just cited, Oregon is classed among the states in which after-acquired real property passes by devise, without any qualification as to the intent of the testator.

And, now, as to the power of testamentary disposition conferred by the Oregon statute. Reading it without the prejudice or prepossession arising from the act of Henry VIII., and the ruling of the English courts thereon, there is nothing to indicate that it was the intention of the legislature to limit the disposing power of the testator in any respect. He is authorized to devise all his estate, real and personal, saving to the widow her dower. Apparently real and personal property are put on the same footing, and there never was any question but that a bequest of personal property carried with it subsequent acquisitions, unless a contrary intention appeared. It is common learning, and the popular impression, that a will takes effect only on the death of the testator; and when a person is authorized to dispose of all his property in that way, the reasonable and fair implication is that he may and can so frame his will as to dispose of all the property he may have when it takes effect that he may die seized or possessed of.

Unlike the statute of Henry VIII., the Oregon act contains no word indicating that the disposing power thereby conferred was limited to land which the testator might *have* or be *seized* of at the time of making his will. Neither is this statute to be construed, as that was, in subordina-

tion to a rule or principle, then vital in the common law, that no one could or should convey land of which he was not seized or possessed at the time.

Since May 1, 1854, a statute of this state has declared that a conveyance of lands in the actual, adverse possession of another shall not, for that reason, be held void. 2 Or. Laws, § 3009. And, in *Taggart* v. *Risley*, 4 Or. 235, it was held that a conveyance of specific land by a deed of grant, bargain, and sale, from which it appeared that it was the intention of the grantors to dispose of the land in question, and not merely their interest therein, passed an after-acquired estate in the premises, or estopped the grantors from setting it up, as against the grantees. See, also, *Lamb* v. *Davenport*, 1 Sawy. 609.

This is not a question of common law. The power to dispose of real property by will exists with us by statute, and any devise thereof must be measured and tested by the statute under which it is made.

Applying the language of this statute to the subject-matter thereof, according to the spirit and tendency of the age in which it was passed and we live, and the analogies of the existing law on the subject of assurances of real property, as well as the manifest convenience and utility of. the matter, in my judgment it conferred on the testator power to devise all the property of which he died seized. As has been stated this statute was borrowed from Missouri—taken from the Revised Statutes of that state of 1835 or 1845, some copies of which were brought to the territory by the early emigrants from that state. Since the adoption of the statute here, the courts of Missouri have held, in *Liggat* v. *Hart*, 23 Mo. 127, (1856,) and *Applegate* v. *Smith*, 31 Mo. 166, (1860,) that it conferred the power to devise after-acquired property. The opinion of Mr. Justice LEONARD, in *Liggat* v. *Hart*, is both able and interesting, and I think its reasoning sound and the conclusion correct.

The statute confers the unqualified power of disposing of real and personal property by will; and a will made under it may and will pass an after-acquired interest in the land, if such appears to have been the intention of the testator.

Counsel for the plaintiff cites an expression of mine in *Coulson* v. *Holmes*, 5 Sawy. 281, to the effect that real property acquired after the making of a will does not pass thereby.

The question decided in the case was that a conveyance of property by deed supersedes the prior disposition of it by will, and therefore the property went to the grantee, and not the devisee. The remark was made by way of argument or illustration, from the stand-point of the common law construction of the statute of Henry VIII., and without any special reference to the statute of Oregon.

This is a mere *obiter dictum*, and has no application to a will made under the Oregon statute.

Admitting that the testator had the power to dispose of the property in controversy by this will, the next question is, has he done so?

This is a question of intention, to be decided on the language of the will, the circumstances of the testator, and the reasonable inference that

when a will purports to dispose of all the testator's property it was his intention to dispose of all that he might die seized or possessed of, unless something appears to the contrary. *Cushing* v. *Aylwin*, 12 Metc. 175. In this case the testator, after disposing of specific interests in lands elsewhere than in Oregon, devises and bequeaths to his sister, the ancestor of the defendants, all his "lots, lands, and real estate" in the state of Oregon, or elsewhere; also all his "personal property and estate of whatever kind or nature." This language clearly indicates that the testator did not intend to die intestate as to any of his property, but that he intended to make his sister Ellen E. Ray his residuary devisee and legatee, for reasons satisfactory to himself.

Mr. Redfield says, (1 Redf. Wills, 385:) "General devises and bequests seem to have been universally construed to include all which it was in the power of the testator to dispose of, which, as the law now stands in most of the American states, will embrace all the testator's estate, whether real or personal, at the time of his decease."

Indeed, the power being admitted, the intention to devise the property seems too plain for argument.

The testator, "Peter Hardenberg," was well known in Portland, where he lived from 1850 to his death. His property was the fruit of his own industry and economy. He had no family, and it is very improbable that he intended to die intestate as to this valuable property, worth probably $30,000, and thus allow those whom he had deliberately excluded by his will from all benefit in his estate, as it then stood, to share the same with his sister Ellen E. Ray or her children.

We are not here to consider the propriety of this devise, which was a matter solely for the testator, but the probability of it. If he did not intend property of such value to pass under the residuary devise to his sister, the language of which he knew fully embraced it, he would most naturally have made another will or added a codicil to this. But he evidently rested satisfied on the impression that, having devised all his lands wherever situate, and all his "estate of whatever kind or nature," to his sister, she would get all he *died seized and possessed of;* and, had these latter words been inserted in the will, as they should have been, the intent would have been demonstrated beyond a peradventure.

The purchase of this property probably diminished by that much the personal estate which otherwise would have come to the defendants under the will. In making the exchange or investment the testator would naturally act on the impression that he was simply converting the money he intended for his sister into real property for her benefit at his death.

This conclusion makes it unnecessary to consider the effect of the deeds from Rachel F. Lefevre to the parties plaintiff and defendant. She had no interest in the property to convey.

There must be a finding of fact for the defendants, as indicated in this opinion.