## ANN R. WILSON AND MARY E. WAKEMAN, PLAINTIFFS, *v.* W. L. McEWAN ET AL., DEFENDANTS.

SEAL—IOWA STATUTE CONCERNING, ADOPTED IN OREGON TERRITORY.—The statute of Iowa Territory respecting seals, approved January 24, 1839, and adopted by the provisional government of Oregon on the twenty-fourth day of June, 1844, was valid, and continued in force until it was repealed by the legislative assembly of Oregon.

IDEM—WHAT CONSTITUTES.—By that statute any device or scrawl affixed to an instrument by way of seal was to have the same effect as if it were actually sealed.

DEEDS AND POWER OF ATTORNEY, HOW PROVED.—Deeds and powers of attorney executed and delivered in 1845 and 1846, and not acknowledged or proved during the time of the provisional government, may be proved under sections 17 and 18, page 517 of the general laws of Oregon so as to entitle the same to be recorded.

ADVERSE POSSESSION—OCCUPANCY OF TOWN LOT.—Where the purchaser of several lots and blocks of land in a town resides on one of the blocks so purchased, this occupancy does not extend his adverse possession to any lot or block unoccupied and unimproved by him as against one having a prior title thereto.

ESTOPPEL—COVENANTS OF GENERAL WARRANTY.—Where a deed contains covenants of general warranty as to title, the grantor and all persons in privity with him will be estopped from afterwards denying such title.

APPEAL from Clatsop County. The facts are stated in the opinion.

*Dolph, Bronaugh, Dolph & Guion,* for appellants:

The power of attorney by Welch and Shively authorizes the attorney in the name and behalf of James Welch to bargain, sell and dispose of in any manner he may see fit, any lot or lots owned by Welch and Shively jointly; and Welch agrees to ratify the same.

1. Did it authorize the attorney to convey?

2. Did it authorize him to convey the block in question, *i. e.*, was Block 11 owned by Welch and Shively jointly?

3. If said instrument empowered Shively to convey for Welch, did it authorize him to convey with covenants of warranty?

To aid in construing the provisions of this instrument, we state a few general propositions of law applicable to such construction. A power of attorney is subject to strict

interpretation. (*Withington* v. *Harring*, 5 Bing. 442; *Wood* v. *Goodrich*, 6 Cush. 117; *Ferreira* v. *Depew*, 17 How. Pr. 418; *Rossiter* v. *Rossiter*, 8 Wend. 495; *Treat* v. *DeCelis*, 41 Cal. 202.) When one is appointed by written instrument the attorney in fact of another, his power to bind his principal must be ascertained alone from the language of the instrument. (*Blum* v. *Robertson*, 54 Cal. 129; *Mech. Bank* v. *Bank of Columbia*, 5 Wheat. 326.)

The party dealing with such an agent is bound to know at his peril what the power of the agent is. (*Blum* v. *Robertson*, 24 Cal. 141; *Beals* v. *Allen*, 18 Johns. 363; *Hubbard* v. *Elmer*, 7 Wend. 446; *North River Bank* v. *Aymer*, 3. Hil. 263; *Stow* v. *Wise*, 7 Conn. 214.)

The authority to bargain and sell does not authorize the agent to convey where, by express terms or from the tenor of the whole instrument, it may be ascertained that the intent of the parties is that the sale is to be ratified by the principal. (*Hubbard* v. *Elmer*, 7 Wend. 447; *Valentine* v. *Piper*, 21 Pick. 92.) If the intent of the instrument in question is not that the principal, his heirs, etc., will execute conveyances for lands sold by the attorney, why the words: "And I do hereby bind myself, my heirs, executors and administrators to ratify the same?"

Upon the second proposition it seems too plain for argument that the power of attorney can have no reference to any lots not at the date of the power owned by Welch and Shively jointly. Thus, in *Johnson* v. *Sukely* (2 McLean, 565) it was held that a power of attorney "to sell and convey all and singular the lands whereof the principal was seised in the state of Ohio" had no reference to lands which had been sold, and only authorized the attorney to convey such lands as he should sell, and this construction is a necessary one, from the principle that a power of attorney is subject to strict construction. James Welch does not appear to have had any title to this block jointly with Shively or otherwise. According to the finding he jointly occupied and claimed the tract in which the block was situated, but Shively and wife obtained the title.

As to the proposition that an attorney authorized to con-

vey is not authorized to warrant, there is some conflict of authority sustaining the proposition we cite. (*Nixon* v. *Hyzerott*, 5 Johns. 58; *Gibson* v. *Hall*, 7 Id. 390.) But if this is not the law in an ordinary case, we respectfully insist it should be the rule applied to this case. It is a principle of law well established that a written instrument is to be construed by the light of all the surrounding circumstances. What was the condition of the subject-matter of this instrument and the circumstances surrounding this transaction? The parties were jointly claiming a tract of government land, and there was no law by which title could be acquired from the government.

Under these circumstances, the authority to covenant that if title should be obtained from the United States by the grantors they would make a further conveyance, the usual and appropriate covenant might possibly be held to be within the scope of attorneys' authority, but the unusual covenants of this deed for conveyance of such a title certainly can not be held to be within the authority of the agent.

If we are correct in the proposition that the power of attorney did not authorize the attorney to execute a deed with covenants of waranty, then the deed, if valid for any purpose, must be treated as a quitclaim deed, and only conveyed the then right of the grantors a possessory right and nothing more. (14 Johns. 193, 194; *Fields* v. *Squires*, 1 Deady, 379, 380; *Lownsdale* v. *Portland*, 1 Id. 15, 16; Van Rensselaer, 11 How. U. S. 297, 322; *Lownsdale* v. *Parrish*, 21 How. 293; 2 Or. 288; 18 Cal. 465; 30 Id. 344; *Bruce* v. *Luke*, 9 Kan. 201; 13 Wall. 240. The legal estate was therefore neither conveyed by the deed nor passed by the covenants.

Again, this deed was not sufficient to convey the legal title, it being unacknowledged. (1 Or. 202; 6 Wheat. 577; Laws of Oregon, 1843, 1852, p. 139, sec. 6; subd. 44, secs. 318, 43; 3 Wash. on R. P. 288; 13 Ohio, 269, 270; 26 Wis. 614; 1 Ham. 351; 5 Id. 190.) The deed being insufficient to convey any title, a covenant or warranty con-

tained in it would not estop the grantor. (*Patterson's Lessees* v. *Pease*, 5 Ham. 191, 192.)

If it shall be contended that the attempted proof of these instruments was sufficient to pass the legal title, then we answer that the statute of limitations had run long before the attempted proof, and the action is therefore barred. The covenant for further assurance, if it should be held to be within the authority of the attorney, would not, like the covenant of waranty, work a transfer of the title which came to Welch by estoppel, but only entitles the grantor to enforce a conveyance by suit. (2 Smith's Leading Cases, 735, 736; Rawle on Cov. for Title, 185, 202; *Lamb* v. *Burbank*, 1 Sawyer, 232; *Lamb* v. *Davenport*, 18 Wall. 313, 314.)

The deed was not under seal, and therefore did not pass the legal title. At common law a seal was a necessary requisite to every deed. If there was any statutory law affecting conveyances of land in force in 1845, it was the Iowa act, entitled "An act to regulate conveyances," approved February 16, 1843, and found on pages from 138 to 146 of the laws of Oregon, from 1843 to 1849; and an act of the legislative assembly of Iowa, passed at its first session, approved January 24, 1839. Page 535 of the session laws, which provided " that any instrument to which the person making the same shall affix any device or scrawl by way of seal, shall be adjudged and held to be of the same force and obligation as if it was actually sealed."

If these acts were in force in Oregon, it was by virtue of an act of the legislative committee of Oregon, passed June 27, 1844, found on pages 98, 99 and 100 of the same volume of laws; section 1 of article 3 of which act was as follows:

Section 1. All the statute laws of Iowa territory passed at the first session of the legislative assembly of said territory, and not of a local character, and not incompatible with the condition and circumstances of this country, shall be the law of this government unless otherwise modified; and the common law of England and principles of equity not modified by the statutes of Iowa or of this government,

and not incompatible with its principles, shall constitute a part of the law of this land.

We respectfully insist in regard to these acts:

1. The legislative committee of 1844 had no legislative authority to make laws to bind the title to lands in the territory;

2. If such legislative power was vested in the committee, the committee could not, by the sweeping enactment above quoted, enact all the laws of another sovereignty. Whatever effect the courts of this state may have at any time given to these enactments in controversies concerning the possessory rights of settlers, they ought not to be held by such enactments as would bind the title to real property which was not subject at the time to private ownership.

But suppose that the act in question had such binding force, then let us inquire how must a deed have been executed under that act for lands in the territory of Oregon, when the deed was executed out of the territory. Section 40 provides:

"That all deeds and conveyances of lands, tenements or hereditaments situated, lying and being in this territory, which shall hereafter be made and executed in any other territory, state or country, whereby such lands, tenements or hereditaments shall be conveyed, etc.,  *  *  *  may be acknowledged, proved and certified according to and in conformity with the laws and usages of the territory, state or country in which such deeds or conveyances were acknowledged or proved, or in which they shall be acknowledged or proved."

The court finds the conveyance in question to have been executed at some place outside the territory of Oregon, and there was no proof as to what was the law of that place regulating conveyances. It was incumbent upon the plaintiff, in offering the deed in question, to have shown by proof the laws of the place where the deed was executed. (Civ. Code, secs. 698, 715, 716.)

In this case, also, no device or scroll was affixed to the deed in question by the grantor; the bill of exceptions

shows that the device was a printed one, made by the printer at the time of printing the deed.

Upon the second proposition there is no controversy, but that the possession of Mrs. Shively, from the twenty-seventh day of September, A. D. 1850, until the eighteenth day of February, 1860, was actual and adverse. The theory of the plaintiffs is that, upon the conveyance of said block by Mrs. Shively and her husband to James Welch, on that date, John M. Wilson became invested at once with the legal title and, in law, with the constructive possession, by virtue of the covenants of warranty in the deed of the third of June, 1846; but admitting, for the sake of argument, the sufficiency of the deed in question to produce in law such results, still there can be no ·such constructive possession where there is adverse actual possession, and we submit that the findings show such adverse possession in James Welch and his heirs and legatees. (Angel on Limitations, p. 425, sec. 18; *Ewing's Lessee* v. *Burnett,* 11 Pet. 41; *Watkins* v. *Holman,* 16 Id. 54; *The People* v. *Van Rensselaer,* 9 N. Y. 291, 329, 343; *Jackson* v. *Richards,* 6 Cowen, 623; *Jackson* v. *Woodruff,* 1 Id. 276; *Jackson* v. *Vermilyea,* 6 Id. 679; *Draper* v. *Shoat,* 25 Mo. 197; *Fitch* v. *Gosser,* 54 Id. 270; *Powell* v. *Davis,* 54 Id. 315; *Miller* v. *Northrup,* 46 Mo. 397.

Indeed, the learned judge of the court below, in announcing the opinion in the case at bar, seemed to acknowledge the sufficiency of the possession of James Welch to bar the action but for another principle which he announced, to wit: That the possession of Welch was, under the law, the possession of Wilson; that is to say, that Welch as a grantor could not hold adversely to his grantee Wilson, and his honor, as will be seen by reference to the conclusions of law, based his decision upon the question of adverse possession of Welch upon this very proposition. But this proposition is clearly erroneous; and even if it is the law as applicable in an ordinary case, is erroneous as applied to the case at bar.

It must be borne in mind that the deed of June 3, 1846, was made out of the territory of Oregon by the attorney in

fact, and never was ratified by Welch, but, on the contrary, always repudiated by him. A grantor may hold adversely to his grantee. (*Hartman* v. *Reed*, 50 Cal. 485; *Franklin* v. *Dorland*, 28 Id. 179, 180; *Traip* v. *Traip*, 57 Me. 268.)

The foregoing is presented upon the findings alone, but if we look to the bill of exceptions upon this point of adverse possession the matter is placed beyond question under the authorities; we quote: "The defendants, among other things to maintain the issues upon their part, proved that James Welch, the grantor of said Jesse McEwan and ancestor of said James W. Welch *et al.*, had resided continuously upon block 17, as shown upon said exhibit 'G' (the map of Shively's Astoria attached to the bill of exceptions) since prior to A. D. 1850, to the time of his death, and from the date of the deed from J. M. Shively and wife to him, dated February 18, 1860, had claimed all the property conveyed by said deed and exercised the same ownership over said block 11, as shown on exhibit 'G,' as over the other unimproved property conveyed by said deed and owned by him in Astoria."

By comparing the map, exhibit "G," with the deed of February 18, 1860, it will be found that blocks 17 and 11 are connected by other blocks conveyed by said deed, the blocks owned by Welch cornering and touching each other at the corners. It is believed no authority can be found holding that such possession is not actual possession.

*Sidney Dell and J. Q. A. Bowlby,* for respondents:

Objection to power of attorney. (a) It was properly executed and proved. One witness was sufficient as the law then was (2 Bl. 307, 8; 4 Kent. 458); conveyance good if made according to law of force when made (Code, sec. 36, p. 520), and proved according to law of force when recorded. (Code, p. 520, secs. 17, 36.) It was so proved. (Code, sec. 18, p. 517.) (b) It was material, because the evidence showed Shively and Welch were jointly occupying and claiming the land embraced in the deed. (c) It is no objection that it contained no power to make covenants, for a deed, without covenants, passes after acquired title.

(*Taggart* v. *Risley*, 4 Or. 235, 237.) But it does contain such power in its general and all-embracing terms (1 Or. 117), covenant of warranty usual under such power of attorney. (3 Pet. 372.) (d) It authorizes a joint warranty. (2 Pars. Cont. 533.) "Grant, bargain and sell" are express covenants of title at common law. (Dunlap's Abr. 65.) Joint covenant binds each vendor for the whole if title came to him. (*Field* v. *Squires*, Deady R. 366; 2 Pars. Cont. 533; 1 Bl. U. S. 309; 13 Wall. 291.)

Objections to Wilson's deed: (a) It was properly executed. The printed seal was sufficient "device" ("any instrument to which the person making the same shall affix any device or scrawl by way of seal," etc.) (Blue Book, p. 435, secs. 1, 2, Iowa Laws of 1839, adopted here 1844. 1. It is not a seal, but a "device, by way of seal." (See Webster's Dictionary, "device" as emblem.) 2. It is not required to be by pen nor ink, but here it is by ink. 3. It need not be affixed by the person signing the deed, but only adopted, as it is here, by the attesting clause, calling it a seal, for almost always the device or scrawl is made by the attorney and adopted by the signer. Holding otherwise would void half the deeds in the country. The printer can also make it by a parity of reasoning, because it is the act of adoption that makes it the act of the signer. 4. But section 2 of Blue Book implies that if "seal" be mentioned in body of instrument it would be good without a statute. Indeed, this device is used in common law forms. (See 2 Bl. Com. App.; 2 Bl. Com. 305–6.) (b) It is proved according to statute of force at time of proof and record. (Or. Code, pp. 516–17; secs. 11, 17.) (c) The deed corresponds with the description (in the complaint) of the land sued for, and which defendants admit they are in possession of. It was therefore admissible, subject to defendant's right to show that some of its descriptions did not correspond with the description of the block. It was not essential for plaintiff to introduce the map if the deed corresponded with the complaint and the *locus in quo*, as it did here *prima facie*. So there was no error in admitting the deed. (d) But plaintiffs introduced, without objection,

the original plat also, and it showed a disagreement only as to names of streets. That is a false call which will be rejected, the original plat being incorporated indeed by reference. (2 Black. U. S. 499; 3 Otto, 514; 34 Cal. 334; 27 Id. 57, *Reed* v. *Spicer*, 24 Id. 435; 44 Id. 132.) (c) This plat, and not the lithographed copy, a copy of a copy, is the one referred to in the deed; for a deed is construed most strongly against the grantor if there is any uncertainty or ambiguity in its terms, (*Dodge* v. *Walley*, 22 Cal. 224; 41 Id. 595); and all doubts as to the meaning of a deed must be solved in favor of the grantee (36 Cal. 606), and it must be presumed that the lithograph was a true copy of the original. (f) But if the lithograph copy was the one referred to it was introduced after proof of loss by showing its contents, which were found to be same as original except as to names of streets, which latter were false and impossible, and evidence could be introduced to show that fact. "A deed called for a lot designated on a town plat as No. 183, bounded by a street and a river: *Held,* that if the jury were satisfied that the call for a river was a mistake it might be rejected." (*Barclay* v. *Howell's Lessee,* 6 Peters, 498, X. 202.) "Grant of an island by name excludes courses and distances." (*Lodge's Lessee* v. *Lee,* 6 Cranch, 237; II. 385.) See 8 How. U. S. 289; see also 4 Cranch, 176, "liberality in upholding early titles.") Boundaries shown in court of law as well as of equity. (5 Or. 132; 4 Id. 177, 225; 5 Id. 35; Code, secs. 682–67, 690, 845.) So there was no error in the admission of evidence on the deed, and this position applies to all the objections to White's and Shively's evidence.

Did the after acquired title of Welch inure to benefit of Wilson. This is settled in Oregon, whether the deed be with or without warranty. (*Taggart* v. *Risley,* 4 Or. 235, 237; *Barr* v. *Gratz's Heirs,* 4 Wh. 222.)

Possession not adverse for twenty years, because plaintiff's right only commenced in 1860, seventeen years prior to action. Neither does defendant's adverse possession commence till then. (*Carter* v. *Chapman,* 2 Or. 95.)

The facts found by the court do not constitute adverse

possession. It must be a possession open, notorious, uninterrupted and exclusive, and under claim of title. (4 N. Y. 577.) Here the block was entirely vacant. No possession was had. Taxes were paid by defendants most of the time, while two other persons were also paying taxes, and sometimes intruders were warned off. These acts only go to the question of claim of title, and the notoriety of the claim (11 Pet. 41) as a substitute for the notoriety of actual inclosure, implying notice. (44 Cal. 508.) They do not constitute possession itself. It does not appear when warning off intruders commenced, and it is presumable that it only commenced after February 18, 1860, when his title commenced. Inchoate title and seisin (4 Wheat. 213; 1 Wend. 341), possession of grantor not hostile to grantee. (Tyler on E. and Adv. Poss. 868.)

A residence on Block 17 does not constitute a residence on Block 11, though owner of 17 was owner of alternate blocks up to 11. The deed specifies each block as a separate tract.

By the Court, Kelly, C. J.:

This was an action of ejectment brought by respondents against the appellants, W. G. McEwan and Jessie McEwan, his wife, to recover the possession of block number 11 in Shively's, Astoria. The respondent, Ann R. Wilson, claimed to be the owner of a life-estate in said block, and respondent, Mary E. Wakeman, claimed to be the owner in fee of the same property, subject to the said life-estate. McEwan and his wife answered that they were in possession of block 11, claiming lot 7 as the property of Jessie McEwan, and holding as tenants of A. J. Welch for the lots in said block, and as tenant of James Welch's heirs for the remaining lot. The landlords were admitted to defend, and all the defendants denied title in respondents. Nancy Welch, the widow of James Welch, deceased, claimed dower in lot 1. The defendants further set up twenty years adverse possession by themselves and their grantors.

The case having been submitted to the court for trial without a jury the following facts were found by the court.

1. That on and prior to the eighteenth day of April, 1845, James Welch and John M. Shively were jointly occupying and claiming a tract of land in the Territory of Oregon, and in what is now Clatsop County, Oregon.

2. That before said eighteenth day of April, 1845, John M. Shively had laid out the larger portion of said tract on paper, and partly laid out and surveyed on the ground a town, leaving blocks subdivided into lots, along with streets and alleys, and called by him Shively's Astoria.

3. That on the eighteenth of April, 1845, said James Welch executed an instrument of writing, by signing with his own hand and sealing the same with a pen scroll, having only one subscribing witness, and not acknowledged, whereby and wherein he authorized, constituted and appointed John M. Shively his true and lawful attorney, for him and in his name and behalf, to bargain, sell or dispose of, in any way he, said attorney, may see fit, to any person whatever, any lot or lots owned by him and said Welch jointly in the town of Astoria, as fully and effectually as said Welch might or could do if personally present; and binding himself, his heirs, executors and administrators, to ratify the same, which said power of attorney was delivered to said Shively by said Welch.

4. That said Shively afterwards having said power of attorney, and the same being unrevoked, and having such force and effect as it had, if any, on its delivery, afterwards, to wit, on the third day of June, 1846, at some place outside of the Territory of Oregon, but where does not appear, executed an instrument of writing, in his own name and in the name of James Welch, and as attorney in fact for said Welch, whereby the said John M. Shively and James Welch, as grantors, according to the terms of said instrument, for the "consideration of five hundred dollars, have granted, bargained, sold, and by these presents do convey," unto General John Wilson, of the town of Fayette, Howard County, State of Missouri, land described thus: The following described tracts or parcels of land, in the town of Astoria, in the said Territory of Oregon, being part of the settlement right of the said John M. Shively, on which he

7

has laid out and surveyed the said town of Astoria, viz.: Lots Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12, forming Block No. 11, which block is bounded north by Water street, east by Spruce street, south by West First street, and west by Pine street; which lots are each fifty feet front, and one hundred and forty-two feet and one half foot back, bounded on an alley fifteen feet wide, which runs through the center of said block, nearly east and west, which will more fully appear by reference to the plat of said town of Astoria, so laid out as aforesaid, which said plat has been lithographed by E. & J. Hutawa, of Saint Louis, Missouri, to which reference is here made;" and covenanted as grantors with said grantee, his heirs and assigns, to warrant and forever defend the fee-simple title to the said premises, free from the claims of all persons whatsoever; and covenanted also for a new and further deed for said premises, if it should be required to vest a fee-simple title; which paper purported to be sealed, but was signed by John M. Shively in his own name and hand, and by James Welch, by J. M. Shively, his attorney in fact, and had, instead of an impression on wax, or any adhesive substance, for a seal only devices made in ink, by the printer, of circular shape, with the letters "L. S." in the middle; it was witnessed by three witnesses, who signed it as such, and was not acknowledged; this instrument was delivered at the date thereof to said John Wilson.

5. That the said block 11 in said deed mentioned was within the town laid out and surveyed as aforesaid by John M. Shively, prior to the eighteenth day of April, 1845, and was and is within the donation claim or tract patented to Susan M. Shively, the wife of said John M. Shively.

6. That in the year 1850, said John M. Shively being an occupant of the tract of land occupied as aforesaid, in 1845, by Shively and Welch jointly, set up a claim to said tract of land under the act of congress called the Oregon donation law, for himself and his wife Susan M., and so complied with the provisions of said act, as that in the year 1866, patent issued under said law to said John M. Shively and

Susan M. Shively to the west half, which includes said block 11, being patented to said Susan M.

7. That on the eighteenth day of February, 1860, after full compliance by said John M. and Susan M. Shively with said act of congress, the said John M. and Susan M., by deed, duly executed, witnessed, acknowledged and recorded, conveyed with covenants of warranty to said James Welch, among other real property, all of said block 11.

8. That said Welch, as early as 1847, had notice of the deed made by said Shively for himself, and as agent for said Welch to said John Wilson, of date third June, 1846, and took the deed aforesaid of February 18, 1860, from John M. and Susan M. Shively, with knowledge of the said deed for said block 11 to said Wilson.

9. That since 1855, until the commencement of this action, said block 11 has remained open, unimproved and unoccupied, with the exception of a fence put about it by one Munson about 1875, and a building put on lot 7 in said block by the defendant McEwan; but the entry on said block 11 and fencing thereof were, after Jessie McEwan and her husband, W. G. McEwan, had entered into possession, under the deed from James Welch and wife to Jessie McEwan; and said W. G. McEwan was, at the same time, claiming to hold and occupy, and was in possession, as tenant of James Welch, of all of said block 11 except said lot 1; and the right of said Munson to fence said block or any part of it was disputed by said Jessie McEwan, under her claim as owner of said lot 1, and by said McEwan as tenant of said James Welch; and the said McEwan and Welch, before the commencement of this action, had said Munson ejected from said block.

10. That from 1850 to February 18, 1860, said block 11 was in possession of Susan M. Shively, and claimed by her by virtue of her title and proceedings had under the donation law of congress.

11. That after February 18, 1860, and until the death of James Welch, he claimed the said block and exercised acts of ownership over it by warning off trespassers going over it, and paying taxes upon it; and since the death of said

Welch, his heirs and residuary devisees have likewise exercised acts of ownership over and claimed said block.

12. That in 1856 said block was assessed to John Wilson by the assessor of Clatsop county, and in 1857 was sold for such taxes by the auditor of said county, and bid off by one Munson; but whatever interest said Munson acquired was, about the date of the commencement of this action, released to plaintiffs; but the proceedings upon said sale were irregular, and said Munson had no valid deed from the public officers by whom the alleged sale was made, and acquired no title by said sale and proceedings; and, except in the year 1856, said block does not at all appear to have been assessed to John Wilson, nor does he appear at all to have paid any taxes thereon; and neither said John Wilson nor the plaintiffs have been in actual possession of said block 11 or any part of it, except such seisin or possession as may have been acquired by deed aforesaid of June, 1846.

13. That said block 11, since 1856, has been variously assessed to Munson, to James Welch and to J. M. Shively, and several times doubly assessed, James Welch, during the greater portion of the time, having paid taxes on the same.

14. That on the nineteenth day of May, 1875, James Welch, for a valuable consideration, conveyed by deed in due form and duly executed and acknowledged, and recorded to the defendant Jessie McEwan, wife of W. G. McEwan, lot 7 in said block 11; and James Welch having died on the —— day of ——, 1877, his heirs and widow, the defendants herein, duly conveyed by their deed, dated the eighth day of June, 1877, duly executed, and acknowledged all of said block 11, except lots 1 and 7, to the defendant A. J. Welch.

15. That the deed of Shively and Welch to John Wilson, of date third of June, 1846, was, upon proof thereof, duly recorded in the record of deeds of Clatsop county on the twenty-ninth day of December, 1875. The power of attorney aforesaid of James Welch to John M. Shively, of date eighteenth April, 1845, was, upon proof thereof, duly recorded in said records on the fourteenth day of August,

1877. The deed of John M. Shively and wife to James Welch, of date eighteenth February, 1860, was duly recorded in said records on the fifth day of March, 1860. The deed of James Welch and wife to Jessie McEwan, of date nineteenth May, 1875, was duly recorded in said records on the twenty-second day of June, 1876. The deed of the heirs and widow of James Welch to A. J. Welch was duly recorded August 16, 1877.

16. That said Jessie McEwan had no actual notice herself prior to the execution of her said deed, of the deed to or of any claim by said John Wilson to or upon said block 11 or any part of it, but the purchase was made for her and the deed obtained by her husband, W. G. McEwan, who was therein her agent; and the said W. G. McEwan was put upon inquiry and notified, and had reasonable cause to believe and know, that said Wilson had the deed under which he claims and did claim said block; and said A. J. Welch, before the said deed to him was executed, had beside such notice as may have been imparted by the record of the deed from Shively and Welch aforesaid to said Wilson, recorded as aforesaid December 29, 1875, information concerning the said deed to said Wilson, and notice thereof sufficient to put him upon inquiry, and he had reasonable cause to believe that such deed had been made; and it does not appear from any evidence in the case, except the recital in his deed, that said A. J. Welch paid any consideration for said block.

17. That said John Wilson died February 2, 1877, leaving a will, which has been duly proven and recorded in Clatsop county aforesaid, and the plaintiff, Ann R. Wilson, is his widow, and the plaintiff, Mary E. Wakeman, is his devisee, entitled to all the interest or estate of said John Wilson in said block 11, subject to the dower of the widow.

18. That when the deed to said John Wilson above described was made there was before the parties to said deed and the witnesses a lithographed copy of what was then and there represented by J. M. Shively as the plat of the town of Astoria, as it was laid out and surveyed by him, from which said Wilson selected said block 11, and the original

plat was not there, nor any plat that was in all respects a copy of the said original, and the only plat referred to by the plaintiffs in this case and offered in evidence is a record in Book of Deeds of Clatsop county, which record was made in the year 1854, which purports to be a true copy of the original plan of the town of Astoria, as laid out by John M. Shively, and the lithographed copy referred to in Wilson's deed is lost, and, for that reason, cannot be exhibited. The streets around said block 11, as set forth in said deed, are not found on the original plat made by said Shively, nor in the copy found in the Book of Deeds aforesaid, and in so far as the streets named in the deed go to make up the description of the property, the said description is erroneous and impossible. (But the location and representation of block 11, in all particulars except as to streets, was and is the same on the lithograph as on the plat laid out and surveyed by John M. Shively.)

19. That said James Welch having knowledge of the said deed to John Wilson and possession, as is above in these findings described, during his life-time invariably denied and disclaimed orally the title of said Wilson set up in this action.

And as conclusions of law from the facts so found the court finds:

"1. That James Welch had no estate or interest in the land in controversy until the eighteenth day of February, 1860, when the same was conveyed to him by Susan M. Shively and her husband, and on that day and by virtue of said conveyance from Susan M. Shively he (said James Welch) took and had a fee-simple estate in said land.

"2. That by virtue of the deed of June 3, 1846, by Shively and Welch aforesaid to John Wilson, the title acquired by James Welch on said eighteenth day of February, 1860, inured to the benefit of and invested in his grantee, said John Wilson.

"3. That as between said James Welch and his heirs and devisees, the possession of said James Welch found above, of said block 11, was not and is not adverse to John Wil-

son, and his representatives are not barred by the statute of limitations.

"4. That the deed of James Welch to Jessie McEwan for lot 7 in said block, and the deed of Welch's heirs and widow to A. J. Welch, are each, as against the plaintiffs, void and without effect.

"5. That by reason of the deed by James Welch of June 3, 1846, to John Wilson, and the inuring of title to said Wilson as aforesaid, said Nancy Welch had and has no estate for life in said lot 1 in said block or in any part of said block as against the plaintiffs.

"6. That the plaintiffs are entitled to the possession of the property described in the complaint, and the plaintiff, Ann R. Wilson, has therein an estate for life (during her own life); and the defendant, Mary Elizabeth Wakeman, has therein an estate in fee in remainder after the expenditure of said estate for life.

"7. That the plaintiffs are not entitled to any damages for detention."

Many exceptions were taken by the appellants to the rulings of the court in the admission of testimony, and to the findings of law by the court, but most of them have not been argued by counsel and are therefore considered as abandoned by the appellants.

At the trial respondent offered in evidence a power of attorney from James Welch to J. M. Shively, dated April 18, 1845, of which the following is a copy:

"Know all men by these presents, that I, James Welch, have, and by these presents do authorize, constitute, and appoint J. M. Shively my true and lawful attorney for me, and in my name and behalf, to bargain, sell, or dispose of, in any way he may see fit, to any person or persons whatsoever, any lot or lots owned by him and me jointly in the town of Astoria; as fully and as effectually as I might or could do were I personally present, and I do hereby bind myself, my heirs, executors and administrators, to ratify the same.

"Signed and sealed this the eighteenth day of April, in

the year of our Lord one thousand eight hundred and forty-five.                                    JAMES WELCH. [L. S.]

    "In the presence of N. Smith, Witness."

On the twenty-fourth day of April, 1877, before Hon. R. P. Boise, a judge of the circuit court of the state of Oregon, the signature of Noyes Smith, the subscribing witness to the above power of attorney, was duly proven by two witnesses, who also proved that said witness was dead. And on the fourteenth day of August, 1877, before Hon. E. D. Shattuck, one of the judges of the circuit court of the state of Oregon, the signature of James Welch to the said power of attorney was duly proven by two witnesses, who also proved that said James Welch was dead.

Objection was made by appellants to the admission of this power of attorney for the following reasons:

1. That it was not under seal;

2. It was not properly acknowledged or proved;

3. It did not authorize the attorney to convey block 11. It did not authorize him to convey with covenants of warranty.

The provisional government of Oregon on the twenty-seventh day of June, 1844, adopted the statute laws of Iowa Territory passed at the first session of its legislative assembly (except those of a local character) as the laws of the provisional government; and the validity of these laws was afterwards recognized by congress in the fourteenth section of the act of August 14, 1848, establishing the territorial government of Oregon. One of the Iowa statutes so adopted and in force when this power of attorney was executed is as follows: "That any instrument, to which the person making the same shall affix any device or scrawl, by way of seal, shall be adjudged and held to be of the same force and obligation as if it were actually sealed." The power of attorney was proved according to the provisions of section 18, page 517 of the general laws of Oregon. We think the instrument was sealed and proved according to law.

J. M. Shively and James Welch in 1845 were jointly occupying and claiming a tract of land which, prior to April 18 of that year, had been partially laid out into lots and

blocks, streets and alleys, and called Shively's Astoria; and the power of attorney authorized Shively to sell any lots so jointly owned by them. Of course it was well known to every one that the United States owned this land, and the power of attorney must be construed as the parties themselves understood it at the time; that is, that Welch authorized Shively to sell or dispose of any possessory interest which they jointly had in the town lots. But it is objected that the power of attorney did not authorize Shively to execute a deed with covenants of warranty. Welch empowered him to bargain and sell, or dispose of in any manner he might see fit, any lot as fully and effectually as he could do if personally present. The power is certainly comprehensive in its terms, and we think fully authorized Shively to make the deed in question with its covenants of warranty. (Rawle on Covenants for Title, 570; *Le Roy* v. *Beard,* 8 How. 451; *Bronson* v. *Coffin,* 118 Mass. 156; *Coleman* v. *Stark,* 1 Or. 115.) The respondents offered in evidence a deed, of which the following is a copy:

"This indenture, made and executed this third day of June, 1846, between John M. Shively and James Welch, by John M. Shively, his attorney in fact, of the town of Astoria, in the territory of Oregon, of the first part, and General John Wilson, of the town of Fayette, Howard county, and State of Missouri, of the second part, witnesseth: That for and in consideration of five hundred dollars in hand, paid by the party of the second part, the receipt whereof is hereby acknowledged, the parties of the first part have this day granted, bargained and sold, and by these presents do convey to the said party of the second part, the following described tracts or parcels of land in the town of Astoria, in the said territory of Oregon, being part of the settlement right of the said John M. Shively on which he has laid out and surveyed the said town of Astoria, viz.: Lots Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12, forming block No. 11, which block is bounded north by Water street, east by Spruce street, south by West First street and west by Pine street, which lots are each fifty feet front and one hundred and forty-two and one half feet back;

bounded on an alley of fifteen feet wide, which runs through the centre of the said block nearly east and west, which will more fully appear by reference to the plat of said town of Astoria so laid out, as aforesaid, which said plat has been lithographed by E. & J. Hutaway, of St. Louis, Missouri, to which reference is here made; and the said parties of the first part covenant to have the same plat properly recorded as soon as there shall be an office provided by law for that purpose.

"To have and to hold to the said party of the second part, his heirs, executors and assigns, in fee-simple title forever, with all its appurtenances.

"And the said parties of the first part hereby covenant and agree to, and, with the party of the second part, his heirs, executors and assigns, to warrant and forever defend the fee-simple title to above-described premises free from the claims of all persons whatsoever; and the parties of the first part also agree for themselves, their heirs and executors, that they will, at the expense of the party of the second part, his heirs or assigns, make a new and further deed, if the same shall be required, to vest as aforesaid a fee-simple title whenever they or either of them shall demand the same; and the said parties of the first part covenants that the said above-described and conveyed land is free from incumbrances.

" Given under our hands and seals the day and year first above written.

     "J. M. SHIVELY.    [L. S.]
     "JAMES WELCH.    [L. S.]
     "By his attorney in fact, J. M. SHIVELY.

"Signed, sealed and delivered in the presence of, the words 'themselves their' interlined before signed.

     "ELIJAH WHITE,
     "C. E. GALPIN,
     "GEORGE SMIZER."

The objection that this deed was not sealed is untenable. Under the Iowa statute adopted by the provisional government, already referred to, we think the grantor in a deed

could either make or adopt a scroll or device as his seal.
The deed was duly proved in San Francisco by Elijah
White, a subscribing witness, on the twenty-eighth day of
March, 1876, before J. H. Blood, a commissioner of deeds
for this state, in conformity with section 17 of the general
laws of Oregon. Another objection made is, that the in-
strument was no deed because it was not acknowledged or
proved in accordance with subdivision 4 of section 6 of the
Iowa statute of February 16, 1843. It is sufficient to say
that this statute was not in force in Oregon until it was
adopted by the legislative assembly of Oregon territory on
the twenty-ninth day of September, 1849. (General and
Special Laws of Oregon, p. 108.) We think the deed was
sufficient to convey, and did convey, to John Wilson all the
interest of John M. Shively and James Welch in and to
block 11 in Shively's Astoria, with full covenants of war-
ranty as to title. The only remaining question to be con-
sidered is that of adverse possession for twenty years by
appellants and their grantors. The court found as matters of
fact that Shively's Astoria was laid off into lots and blocks,
streets and alleys; that James Welch claimed to own block
11 since February 18, 1860, and exercised acts of ownership
over it by warning off trespassers and paying taxes, but the
block remained open, unimproved and unoccupied until
some time in 1875. We think the court did not err in
deciding that these acts did not constitute an adverse pos-
session on the part of Welch. It appears, by the bill of
exceptions, that his residence was on block 17, several
blocks removed from the one in controversy, and separated
from it by several intervening streets and by lots and blocks
owned by other persons. Blocks 11 and 17 were separate
parcels or tracts of land having no connection to each other,
and the adverse notorious possession of block 17 by Welch
had no relation whatever to or connection with block 11.
To constitute an adverse possession, there must be an
actual possession of the premises; the exercise of some
visible notorious act, such as inclosing, cultivating or other-
wise improving the land. No such occupancy of this was
had. No such acts as these were performed on block 11 by

James Welch during his life-time, and we hold that there was no adverse possession for twenty years by the appellants or their grantors.

The appellants are moreover estopped by the covenants of warranty in the deed of James Welch and John M. Shively to John Wilson, from asserting any title in themselves. That point was expressly decided by this court in the case of *Taggert* v. *Risley* (4 Or. 235). The judgment of the court below is affirmed with costs.